# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
April 18, 2012 Session Heard at Memphis

## ANDRE DOTSON v. CONTEMPORARY MEDIA, INC. d/b/a THE MEMPHIS FLYER, and JOHN BRANSTON

### Direct Appeal from the Circuit Court for Shelby County
No. CT-002682-06, Div. VI      Jerry Stokes, Judge

---

### No. W2011-01234-COA-R3-CV - Filed May 23, 2012

---

This is a libelous defamation case that was dismissed on grant of summary judgment in favor of Appellees, a newspaper and its reporter.  Appellant, who was a then-incarcerated inmate, filed the instant lawsuit, purportedly *in forma pauperis*.  The trial court granted summary judgment in favor of Appellees on grounds that: (1) Appellant's failure to pay all fees and costs in other lawsuits, pursuant to Tennessee Code Annotated Section 41-21-812, required dismissal of the lawsuit; (2) Appellant could not renounce his indigency in order to avoid the operation of Tennessee Code Annotated Section 41-21-812; (3) Appellant failed to issue service of process on the newspaper, thus requiring dismissal of this Defendant/Appellee; (4) the allegedly defamatory statement was protected by the fair reporting privilege. After review, we hold that: (1) because there is no Tennessee Supreme Court Rule 29 uniform affidavit of indigency in this record, we cannot conclude that Tennessee Code Annotated Section 41-21-812 was triggered; (2) having failed to establish in the record that he was, in fact, proceeding as a pauper in this case, Appellant's attempt to renounce his indigency was a nullity; (3) Appellee newspaper was properly dismissed from the lawsuit for lack of service of process; and (4) it was error for the trial court to rule on the motion for summary judgment without first lifting the stay on discovery to allow Appellant to conduct discovery. Vacated in part, reversed in part, affirmed in part, and remanded.

### Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Vacated in Part; Reversed in Part; Affirmed in Part; and Remanded

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Andre Dotson, Memphis, Tennessee, pro se.

Taylor A. Cates, Memphis, Tennessee, for the appellees, John Branston and Contemporary

Media, Inc. d/b/a the Memphis Flyer.

## OPINION

On April 7, 2005, John Branston, a reporter for the Memphis Flyer, attended a federal detention hearing before Magistrate Judge Tu Pham. The hearing was conducted as the result of a motion filed by the government to detain Mr. Rafat Jamal Mawlawi, a suspect in an immigration case with possible terrorist connections. At the hearing, Federal Bureau of Investigation ("FBI") Agent Robert Parker testified that Mr. Mawlawi came to the FBI Joint Terrorism Task Force's attention because Appellant Andre Dotson, who was an inmate at the Shelby County Penal Farm at that time, had contacted the FBI. Agent Parker testified that Mr. Dotson had written to the FBI to inform it that he had evidence of a "marriage scam," into which Mr. Mawlawi had tried to recruit Mr. Dotson.[1] Agent Parker further testified that Mr. Dotson's reliability was suspect and that, after contacting the FBI, Mr. Dotson had then informed Mr. Mawlawi that he was being investigated. Agent Parker stated that Mr. Dotson had subsequently written another letter to the FBI, telling it that he had warned Mr. Mawlawi about the investigation.

Mr. Branston included a summary of Agent Parker's testimony in an article that appeared in the April 14, 2005 issue of the Memphis Flyer (the "Article"). The portion of the Article concerning Mr. Dotson reads, in its entirety, as follows:

> It is not clear how long he [Mawlawi] has been living in Memphis. His one-story, brown brick house is on a corner lot three blocks from Craigmont High School. Since moving to Memphis, Mawlawi had preached and conducted Muslim prayers with inmates at the Shelby County Penal Farm. He apparently came to the attention of the FBI Joint Terrorism Task Force because of an inmate named Andre Dotson, serving time on a charge of aggravated robbery. Dotson wrote the FBI that he had evidence of a marriage scam and said Mawlawi had tried to recruit him.
>
> As explained by FBI agent Robert Parker at the detention hearing, Dotson's information about the marriage scam was good but his trustworthiness was shaky. After contacting the FBI, Dotson told Mawlawi that he was being investigated. Then

---

[1] The scam, according to the article published in the Memphis Flyer, was to bring Moroccan men into the United States illegally by arranging sham marriages and engagements to women from Memphis.

he wrote another letter to the FBI telling them that he had warned Mawlawi about the investigation.

These two paragraphs contain the only references to Mr. Dotson in the Article. The primary focus of the approximately two-thousand-word Article was on the investigation of Mr. Mawlawi's alleged marriage-for-profit scheme.

On April 14, 2006, Mr. Dotson, who was incarcerated at that time, mailed a complaint, titled "Deflammation [sic] Character and Libel Action Against Newspaper," for filing in the Shelby County Circuit Court. The defendants named in the complaint were the "Memphis Flyer Newspaper" and John Branston. Although no Tennessee Supreme Court Rule 29 uniform affidavit of indigency was filed (*see* discussion *infra*), concurrent with his complaint, Mr. Dotson nonetheless filed an "Inmate Affidavit," pursuant to Tennessee Code Annotated Section 41-21-805, and an "Inmate Trust Fund Certification Balance" form pursuant to Tennessee Code Annotated Section 41-21-807. From the record, it does not appear that summonses were issued against either of the named defendants at this time.

Mr. Dotson's case eventually appeared on the trial court's dismissal docket. On April 22, 2010, the trial court dismissed the complaint for lack of prosecution. On July 15, 2010, Mr. Dotson filed a document titled "Relief from Judgment Order," seeking relief under Tennessee Rules of Civil Procedure 60.01 and 60.02. In support of his motion, Mr. Dotson alleged that he did not receive notice of the dismissal until he received a cost bill from the Clerk of Court on June 16, 2010.

On October 13, 2010, Mr. Dotson caused a summons to be issued to Mr. Branston. It is undisputed that this summons was eventually served on Mr. Branston; however, the record does not reflect that a summons was ever issued to "Memphis Flyer Magazine," or to Contemporary Media, Inc. d/b/a The Memphis Flyer, the proper corporate name of the company that publishes the Memphis Flyer ("Corporate Media," and together with Mr. Branston, "Appellees"). Mr. Dotson also served a set of written discovery requests to both of the named defendants at that time.

On December 3, 2010, Appellees moved to dismiss the complaint on two grounds: (1) for insufficiency of service of process; and (2) for failure to comply with Tennessee Code Annotated Section 41-21-812, which requires inmates to satisfy all outstanding court costs assessed against them before they may file a complaint *in forma pauperis*. The motion to dismiss also included a request for a protective order, relieving Appellees of the obligation to respond to Mr. Dotson's discovery requests.

On December 13, 2010, the trial court conducted a telephone hearing. By Order

entered on December 14, 2010, the court granted Appellees' motion for protective order, thus suspending discovery pending a hearing on the motion to dismiss. The court also granted Mr. Dotson's Rule 60 motion and reinstated the original complaint.

On December 21, 2010, Mr. Dotson filed a motion for leave to amend his complaint to replace "Memphis Flyer Newspaper" with Contemporary Media as the proper defendant. While reserving all procedural defenses, Appellees did not oppose Mr. Dotson's motion. The proposed amended complaint was presented for filing on January 7, 2011. The amended complaint does not contain additional allegations; it merely corrects the name of the corporate defendant. Also on January 7, 2011, Mr. Dotson filed a document titled "Motion to Retract Affidavit of Indigency." The Appellees opposed this motion. Mr. Dotson then filed a reply to Appellees' opposition, wherein he alleged that his affidavit of indigency was invalid because he did not have his signature notarized.

Appellees' motion to dismiss, and all other pending motions, were set for hearing on March 15, 2011. On January 25, 2011, more than thirty days in advance of the scheduled hearing, Appellees filed a motion for summary judgment along with supporting documentation. In addition to the procedural defenses raised in the motion to dismiss, Appellees' summary judgment motion raises two substantive grounds: (1) that the allegedly defamatory statements are protected under the fair reporting privilege; and (2) that Mr. Dotson, a then-incarcerated felon, was "libel-proof" as a matter of law. Mr. Dotson opposed the motion for summary judgment. From Mr. Dotson's response, it appears that his primary argument was not that Mr. Branston inaccurately reported Agent Parker's testimony, but that Agent Parker's testimony *itself* was inaccurate. Mr. Dotson submitted a declaration asserting that he had not assisted the FBI in its case against Mr. Mawlawi. Rather, he asserted that he had contacted the FBI regarding another matter. Once he learned that Mr. Mawlawi was the target of the FBI investigation, Mr. Dotson admits that he attempted to inform Mr. Mawlawi that he was being investigated. According to Mr. Dotson's argument, the defamatory element of the Article is not that Mr. Dotson interfered or obstructed the investigation by informing Mawlawi, but that he had assisted the FBI in the investigation in the first place. Appellees submitted a reply brief to address Mr. Dotson's argument. Therein, Appellees argued that the Memphis Flyer did not defame Mr. Dotson by reporting that Mr. Dotson was *more* helpful to the FBI than he actually was.

The March 15 hearing proceeded by telephone, and Mr. Dotson participated. The trial court's order, also entered on March 15, 2011, grants Appellees' motion for summary judgment on three grounds. The court first held that Mr. Dotson's case should be dismissed because he had failed to comply with Tennessee Code Annotated Section 41-21-812 in failing to pay his outstanding court costs prior to filing the present lawsuit *in forma pauperis*. The court further held that Mr. Dotson had only achieved service of process on Mr. Branston,

but had never served Contemporary Media. The court also found that Mr. Dotson's claims are barred by the Fair Reporting Privilege because Mr. Branston had reported and printed what Agent Parker actually said in open court.

Mr. Dotson filed a motion to alter or amend the judgment; this motion was subsequently denied. He appeals, raising three issues, which we restate as follows:

> 1. Whether the trial court properly dismissed Mr. Dotson's claims on grounds that he had failed to comply with Tennessee Code Annotated Section 41-21-812.
>
> 2. Whether the trial court properly applied the fair reporting privilege to Mr. Dotson's claims.
>
> 3. Whether the trial court erred in concluding that the subject Article was not defamatory as a matter of law.

We are cognizant of the fact that Mr. Dotson is proceeding *pro se* in this appeal. Therefore, we first note that *pro se* litigants are held to the same procedural and substantive standards to which lawyers must adhere. As recently explained by this Court:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Jackson v. Lanphere*, No. M2010–01401–COA–R3–CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug. 12, 2011) (quoting *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)).

This case was adjudicated by the grant of summary judgment in favor of Appellees. When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim;

or (2) showing that the non-moving party will not be able to prove an essential element at trial. ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 8–9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." ***Id***. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." ***Id***. at 5 (citing ***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn.1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06." ***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. ***Stovall v. Clarke***, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." ***Mathews Partners***, 2009 WL 3172134, at *3 (citing ***Byrd***, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." ***Byrd***, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." ***Id.*** "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." ***Landry v. South Cumberland Amoco, et al.***, No. E2009–01354–COA–R3–CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010) (citing ***Carvell v. Bottoms***, 900 S.W.2d 23 (Tenn.1995)). However, if there is any uncertainty concerning a material fact, then summary judgment is not the appropriate disposition. As stated by our Supreme Court in ***Evco Corp. v. Ross***, 528 S.W.2d 20 (Tenn.1975):

> The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He [or she] is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a

substitute for a trial of disputed factual issues.

*Id*. at 24–25.

**Service of Process**

With the foregoing parameters in mind, we first address whether the trial court properly dismissed Contemporary Media, Inc. d/b/a The Memphis Flyer on the ground that it was not properly served with the amended complaint.

As explained by this Court, in *Watson v. Garza*, 316 S.W.3d 589, (Tenn. Ct. App. 2008):

> Because the trial court's jurisdiction of the parties is acquired by service of process, proper service of process is an essential step in a proceeding. *Stitts v. McGown*, No. E2005–02496–COA–R3–CV, 2006 WL 1152649, at *2 (Tenn. Ct. App. May 2, 2006) (citing *Haley v. University of Tennessee–Knoxville*, 188 S.W.3d 518, 522 (Tenn.2006)). The record must establish that the plaintiff complied with the requisite procedural rules, and the fact that the defendant had actual knowledge of attempted service does not render the service effectual if the plaintiff did not serve process in accordance with the rules. *Wallace v. Wallace*, No. 01A01–9512–CH–00579, 1996 WL 411627, at *2 (Tenn.Ct.App.M.S. July 24, 1996).
>
> "The Tennessee Rules of Civil Procedure govern the service of process, and the Supreme Court has held that the Rules of Civil Procedure are 'laws' of this state, in full force and effect, until such time as they are superseded by legislative enactment or inconsistent rules promulgated by the Court and adopted by the General Assembly." *Estate of McFerren v. Infinity Transport, LLC*, 197 S.W.3d 743, 747 (Tenn. Workers Comp. Panel 2006) (citing *State v. Hodges*, 815 S.W.2d 151, 155 (Tenn.1991)). "Service of process must strictly comply to Rule 4 of the Tennessee Rules of Civil Procedure." *Wallace*, 1996 WL 411627, at *2.

*Id*. at 593.   As noted above, it does not appear that summonses were issued against either

defendant on the original complaint, i.e., dated April 14, 2006. It was not until October 13, 2010 that Mr. Dotson caused summonses to issue in this case. It is undisputed that the October 2010 summons was eventually served on Mr. Branston; however, there is no indication that Contemporary Media was ever served (and in fact it appears that no summons was ever issued to the corporate defendant). Consequently, there is no dispute that Contemporary Media was never properly served with the lawsuit.[2] Therefore, we can only conclude that the trial court properly dismissed this defendant.[3]

### *In Forma Pauperis*

The question of whether the trial court properly applied Tennessee Code Annotated Section 41-21-812 to bar Mr. Dotson's lawsuit requires interpretation and application of several statutory provisions and procedural rules. These are questions of law, which we review *de novo* with no presumption of correctness. Tenn. R. App. P. 13(d). The Tennessee Supreme Court recently outlined the applicable principles that apply to the question of statutory interpretation:

> When dealing with statutory interpretation . . . our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. ***Houghton v. Aramark Educ. Res., Inc.***, 90 S.W.3d 676, 678 (Tenn.2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not

---

[2] To avoid confusion, we note that, although the trial court allowed Mr. Dotson leave to amend his original complaint (to correct the corporate defendant), this fact alone does not give Mr. Dotson a new chance to serve process in this case. The fact that Mr. Dotson amended his complaint does not relieve him of the requirements of Tennessee Rules of Civil Procedure 3 and 4.01 to issue summonses and obtain prompt service on the original complaint.

[3] Although the October 2010 summons was served on Mr. Branston, neither the trial court, nor the parties to this appeal have raised the question of why service was not issued at or near the time the original complaint was mailed for filing in April 2006. Because the Appellees did raise the question of service of process in their motion to dismiss, this issue is not waived and may be revisited on remand. Specifically, the trial court should determine whether the fact that Mr. Dotson did not initially issue a summons to Mr. Branston is fatal to his lawsuit, despite the fact that Mr. Branston was eventually served with the October 12, 2010 summons. *See* Tenn. R. Civ. P. 3 ("If process remains unissued for 90 days or is not served within 90 days from issuance, regardless of the reason, the plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations unless the plaintiff continues the action by obtaining issuance of new process within one year from issuance of the previous process or, if no process is issued, within one year of the filing of the complaint.").

violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn.2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn.2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn.2006).

*Estate of French v. Stratford House*, 333 S.W.3d 546, 554 (Tenn. 2011). Furthermore, statutes that are part of a broad statutory scheme should be interpreted *in pari materia*, so as to make that scheme consistent in all its parts. *Wells v. Tennessee Bd. of Regents*, 231 S.W.3d 912, 917 (Tenn. 2007); *Lyons v. Rasar*, 872 S.W.2d 895, 897 (Tenn.1994); *State v. Allman*, 68 S.W.2d 478, 479 (Tenn. 1934). Courts are required to construe a statute, or set of statutes, "so that the component parts are consistent and reasonable." *In re Sidney J.*, 313 S.W.3d 772, 775 (Tenn. 2010) (quoting *Cohen v. Cohen*, 937 S.W.2d 823, 827 (Tenn.1996)). We also have a duty to interpret a statute in a manner that makes no part inoperative. *In re Sidney J.*, 313 S.W.3d at 775–76 (citing *Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn. 1975)).

Tennessee Code Annotated § 41–21–801 *et seq.* , the Tennessee Prisoner Litigation Reform Act (the "Act"), was enacted "to counter some of the abuses that arise when inmates exercise their rights to file lawsuits *in forma pauperis*." *Sweatt v. Tennessee Dep't of Correction*, 99 S.W.3d 112, 114 (Tenn. Ct. App. 2002). As noted above, the primary ground for the trial court's grant of summary judgment was that the filing of the lawsuit was in violation of Tennessee Code Annotated Section 41-21-812, which provides that:

> (a) Except as provided by subsection (b), on notice of assessment of any fees, taxes, costs and expenses under this part, a clerk of a court may not accept for filing another claim by the same inmate until prior fees, taxes, costs and other expenses are paid in full.
>
> (b) A court may allow an inmate who has not paid any costs or expenses assessed against the inmate to file a claim for injunctive relief seeking to enjoin an act or failure to act that creates a substantial threat of irreparable injury or serious physical harm to the inmate.

As discussed in the annotations to this statute:

> One purpose of the statutory scheme imposing a duty upon

inmates who file claims *in forma pauperis* to submit affidavits documenting their prior history of litigation before a trial court can rule on their current claims is to bar inmates who have filed malicious or frivolous claims from filing any further lawsuits until they have paid the costs that have accrued from those prior claims.

Tenn. Code Ann § 41-21-812, at n. 1 (citing **Williams v. Bell**, 2000, 37 S.W.3d 477 (Tenn. Ct. App. 2000), *perm. app. denied* (Tenn. Jan. 8, 2001)).  To achieve this purpose, "[c]ourt clerks are barred from filing any claims by inmates who have not paid the costs remaining from prior cases."  **Id**. at n. 2 (citing **Sweatt v. Tennessee Dept. of Correction**, 99 S.W.3d 112 (Tenn. Ct. App. 2002), *perm. app. denied* (Tenn. Jan. 27, 2003).  This bar applies to validly assessed unpaid costs from all prior cases, not only those found to be malicious or frivolous."  **Id**.  If a clerk erroneously accepts, for filing, a claim, to which Tennessee Code Annotated Section 41-21-812 applies, then the trial court is authorized to dismiss the case under the statute.  *See*, *e.g.*, **Davis v. Holland**, 31 S.W.3d 574, 577 (Tenn. Ct. App. 2000).

It is undisputed that, at the time he filed his complaint, Mr. Dotson had outstanding fees and costs in the Shelby County Circuit Court as follows:

1.  Case No. CT-1054-01, $499.24
2.  Case No. CT-1208-03, $675.70
3.  Case No. CT-2732-01, $807.95
4.  Case No. CT-3581-03, $362.70
5.  Case No. CT-5007-04, $85.70
6.  Case No. CT-7233-01, $578.70

Based upon these outstanding costs, the trial court determined that Tennessee Code Annotated Section 41-21-812 barred the lawsuit.  This conclusion presupposes that Mr. Dotson was proceeding as a pauper in this case.  Tennessee Code Annotated Section 41-21-802 states that the statutory provisions concerning the filing of *in forma pauperis* lawsuits by inmates (i.e., the Act) "appl[y] only to a claim brought by an inmate . . . in which an affidavit of inability to pay costs is filed with the claim by the inmate."  Under the plain language of this provision, the Act is only implicated when two criteria are met: (1) the lawsuit must be filed by an inmate, and (2) the inmate must also have filed "an affidavit of inability to pay costs."  The question is whether this "affidavit of inability to pay costs" is a Tennessee Supreme Court Rule 29 uniform affidavit of indigency, or whether the filing of only a Tennessee Code Annotated Section 41-21-805 inmate affidavit is sufficient to satisfy the second criterion. As noted above, Mr. Dotson did not file a Tennessee Supreme Court

Rule 29 affidavit of indigency in this case; he only filed a § 41-21-805 affidavit.[4]  If the § 805 affidavit was not sufficient, Mr. Dotson was not proceeding *in forma pauperis*.  In that scenario, the provisions of § 41-21-812 cannot be the basis for dismissal of his lawsuit because the Act was not triggered pursuant to Tennessee Code Annotated Section 41-21-802, *supra*.  This question hinges upon whether Mr. Dotson can proceed *in forma puaperis* in the absence of a Tennessee Supreme Court Rule 29 uniform affidavit of indigency.[5]  We now turn to address that question.

Tennessee Supreme Court Rule 29 provides, in pertinent part:

> Pursuant to Tenn. Code Ann. § 20-12-127(a), any civil action may be commenced by a resident of this state without giving security as required by law for costs and without payment of litigation taxes due by filing the oath of poverty set out in the statute and by filing an affidavit of indigency as prescribed by court rule. Pursuant to Tenn. Code Ann. § 20-12-127(a)(2), the uniform civil affidavit of indigency document appended to this rule is hereby adopted and shall be used in all such civil cases. The uniform civil affidavit of indigency shall also be used in all cases commenced pursuant to Tenn. Code Ann. § 20-12-128 (pertaining to the pauper's oath in actions filed by guardians), § 20-12-129 (actions filed by next friends of infants) and § 20-12-130 (actions filed by personal representatives).[6]

---

[4] The Tennessee Code Annotated Section 41-21-805 affidavit has been called "a special inmate affidavit" in our caselaw.  *See **Keener v. Tennessee Bd. of Probation and Parole***, No. M2009-01788-COA-R3-CV, 2010 WL 3170772 (Tenn. Ct. App. Aug. 11, 2010).

[5] Finding only the § 41-21-805 affidavit in the record, this Court entered an Order, requiring the trial court clerk to inform us whether Mr. Dotson actually filed a Rule 29 uniform affidavit of indigency at the outset of this lawsuit.  According to the court clerk, he did not.  Rather, concurrent with his complaint, Mr. Dotson filed only the § 41-21-805 affidavit, and a inmate trust account statement. To avoid confusion, we note that Mr. Dotson did file a Tennessee Supreme Court Rule 29 uniform affidavit of indigency to proceed in the instant appeal as a pauper.  However, this filing bears only on Mr. Dotson's indigency as an appellant; it does not establish him as a pauper for purposes of the lower court's proceedings.

[6] The language used in Rule 29 is based upon Tennessee Code Annotated Section 20-12-127, which states:

**20-12-127. Poverty oath**.

(continued...)

-11-

***

> This rule shall not be interpreted to modify or repeal any
> provision contained in Tenn. Code Ann. §§ 41-21-801 through
> -818, which apply to claims filed by inmates.

*Id*. The uniform affidavit of indigency form appended to Rule 29 requires the putative pauper to provide information, including the names of all dependents, present income, future income (from such sources as SSI, disability, retirement, workers' compensation, and unemployment benefits), assets, liabilities, and monthly expenses. As stated in Rule 29, *supra*, the form "shall be used in all. . . civil cases. . .," where the lawsuit is filed by a Tennessee resident, without payment of security, costs, or taxes.

Tennessee Code Annotated Section 41-21-805 provides that, "[a]ny inmate who files a claim with an affidavit of inability to pay costs shall file **a separate affidavit** with the following information [*see* discussion immediately below]." Tenn. Code Ann. § 41-21-805(a) (emphasis added). The use of the phrase "a separate affidavit" indicates that the § 41-21-805 affidavit is in addition to the uniform affidavit of indigency required in Rule 29 (i.e., the "affidavit of inability to pay costs" filed with the claim). Specifically, we conclude that § 41-21-805(a) is only triggered when an inmate files a Rule 29 uniform affidavit of indigency with his or her claim. Consequently, it is only when the Rule 29 affidavit is filed,

---

[6](...continued)

> (a) Any civil action may be commenced by a resident of this state without
> giving security as required by law for costs and without the payment of
> litigation taxes due by:
>
> (1) Filing the following oath of poverty:
>
> I, _____, do solemnly swear under penalties of perjury, that owing
> to my poverty, I am not able to bear the expense of the action which I am
> about to commence, and that I am justly entitled to the relief sought, to the
> best of my belief;
> and
> (2) Filing an accompanying affidavit of indigency as prescribed by court
> rule.
>
> (b) The filing of a civil action without paying the costs or taxes or giving
> security for the costs or taxes does not relieve the person filing the action
> from responsibility for the costs or taxes but suspends their collection until
> taxed by the court.

that the inmate is also required to file the "separate affidavit" contemplated under § 41-21-805. Our interpretation that Tennessee Code Annotated Section 41-21-805 is not implicated unless and until the inmate files his or her Rule 29 uniform affidavit of indigency is supported by the fact that the Rule 29 affidavit requires very different information than that required in a § 41-21-805 affidavit. A Rule 29 affidavit is concerned with the party's income, liabilities, and expenses. On the other hand, the § 41-21-805 affidavit requires:

> (1) A complete list of every lawsuit or claim previously filed by the inmate, without regard to whether the inmate was incarcerated at the time any claim or action was filed; and
> (2) For each claim or action listed in subsection (a):
>
> (A) The operative facts for which relief was sought;
> (B) The case name, case number and court in which the suit or claim was filed;
> (C) The legal theory on which the relief sought was based;
> (D) The identification of each party named in the action; and
> (E) The final result of the action, including dismissal as frivolous or malicious under this part or otherwise.
> (b) If the affidavit filed under this section states that a previous suit was dismissed as frivolous or malicious, the affidavit must state the date of the final order affirming the dismissal.
> (c) The affidavit must be accompanied by a current certified copy of the inmate's trust account statement.

Tenn. Code Ann. § 41-21-805. Because the § 41-21-805 affidavit is only concerned with the inmate's previous lawsuits and, specifically, with whether there are any outstanding costs associated with the lawsuits, it does not serve the same function as the Rule 29 affidavit. The Rule 29 affidavit forms the basis for the threshold inquiry of whether a party may be considered a pauper based upon his or her income and liabilities. The § 41-21-805 affidavit provides a basis for determining whether the inmate has filed malicious or frivolous claims, and whether any court costs are owed as a result of the previous filings. Therefore, we conclude that the § 41-21-805 affidavit is "separate" and distinct from the Rule 29 affidavit, and that the § 41-21-805 affidavit cannot be filed in lieu of the Rule 29 affidavit. Rather, under the statutory scheme, the Rule 29 affidavit must be filed in order to trigger the applicability of Tennessee Code Annotated Section 41-21-805.

Although the specific question of whether both a Rule 29 affidavit and a § 41-21-805 affidavit are required has not been specifically addressed in our jurisprudence, we nonetheless find guidance in those cases where inmates have been allowed to proceed *in*

*forma pauperis* under the Act. One such case is ***Fields v. Corrections Corp. of America***, No. M2011–01344–COA–R3–CV, 2012 WL 987337 (Tenn. Ct. App. March 21, 2012), wherein this Court affirmed the dismissal of an inmate's lawsuit because the inmate had failed to disclose all of his prior lawsuits in his Tennessee Code Annotated Section 41-21-805 affidavit. In reaching our conclusion, we stated, in relevant part, that:

> Pursuant to the statutory scheme [i.e., the Act], Petitioner was required to file an affidavit addressing his prior lawsuits [i.e., a Tenn. Code Ann.§ 41-21-805 affidavit], another one attesting to his inability to pay court costs [i.e., a Rule 29 uniform affidavit of indigency], and a certified copy of his inmate trust account. Tenn. Code Ann. § 41–21–805.

*Id*. at *2. Likewise, in ***Brown v. Majors***, No. W2001-00536-COA-R3-CV, 2001 WL 1683768 (Tenn. Ct. App. Dec. 19, 2001), this Court stated that the inmate "sought to proceed *in forma pauperis*, **thereby triggering** the provisions of section 41-21-801, *et seq*." *Id*. at *3 (emphasis added); *see also **Vanlier v. Turney Center Disciplinary* Bd.**, No. M2010-01146-COA-R3-CV, 2011 WL 149876, at *2 (Tenn. Ct. App. Jan. 7, 2011) ("The Petitioner filed an affidavit of indigency requesting that the Court allow him to file this matter upon a pauper's oath. Pursuant to Tenn. Code Ann. § 41-21-805(a)(1) and (2), the Petitioner **also was** required to file a **separate** affidavit listing all lawsuits previously filed by the Petitioner and providing specific information regarding each such lawsuit."); ***Hill v. Tennessee Bd. of Probation and Parole***, No. M2008-00561-COA-R3-CV, 2009 WL 1362363, at *1 (Tenn. Ct. App. May 14, 2009) ("The Trial Court entered an Order requiring petitioner to . . . pay the $192.50 filing fee **or** file a pauper's oath **and** furnish the information required by Tenn. Code Ann. § 41-21-805, etc."); ***Phillips v. Tennessee Bd. of Probation and Parole***, No. M2007-00573-COA-R3-CV, 2008 WL 2229516, at *1 (Tenn. Ct. App. May 29, 2008) ("The Chancery Court entered an order . . . requir[ing] [the inmate to] file a pauper's oath; [and] an affidavit containing the information required by section 41-21-805."); ***McLemore v. Traughber***, No. M2007-00503-COA-R3-CV, 2007 WL 4207900, at n. 3 (Tenn. Ct. .App. Nov. 28, 2007) (noting that the inmate's "affidavit of inability to pay costs, [was] filed **along with** his petition pursuant to Tennessee Code Annotated section 41-21-805."); ***Adams v. Tennessee Dept. of Corrections***, No. M2005-00471-COA-R3-CV, 2007 WL 1574277, at *1 (Tenn. Ct. App. May 30, 2007) ("[T]he Chancery Court filed an order noting that the petitioner had "filed civil action on a pauper's oath," and directing him to file an affidavit in accordance with Tenn. Code Ann. § 41-21-805."); ***Sweatt v. Tennessee Dept. of Correction***, 99 S.W.3d 112, at 113 (Tenn. Ct. App. 2002) ("Mr. Sweatt filed an affidavit of indigence with his petition, **together with** an affidavit pursuant to the requirements of Tenn. Code Ann. § 41–21–805."); ***Bradfield v. Dukes***, No. W2001-02067-COA-R3CV, 2002 WL 1760237, at *3 (Tenn. Ct. App. April 17, 2002)

("With his petition, Mr. Bradfield filed a "Uniform Civil Affidavit of Indigency." As Mr. Bradfield asserted that he was unable to bear the expenses of his cause of action, he was required to comply with section 41-21-805 of the Tennessee Code."); ***Howard v. Morgan***, No. M2000-00548-COA-R3-CV, 2001 WL 703885, at *1 (Tenn. Ct. App. June 22, 2001) (stating that the inmate ". . .submitted a Uniform Civil Affidavit of Indigency. As a state inmate seeking to proceed *in forma pauperis*, **he was also required** [to comply with the requirements of Tenn. Code Ann. § 41-21-805[].".). (emphasis added throughout).

Based upon the foregoing authority, and the plain language of the Act, we hold that an inmate must first file a Tennessee Supreme Court Rule 29 uniform affidavit of indigency in order to implicate the Tennessee Prisoner Litigation Reform Act. Because Mr. Dotson did not file the initial Rule 29 affidavit of indigency, the Act was not applicable in this case. Consequently, it was error for the trial court to dismiss the case under Section 41-21-812 of the Act. Furthermore, because Mr. Dotson was never established as a pauper, any attempt to renounce his indigency was a nullity. Therefore, we reverse the trial court's grant of summary judgment on the ground that Mr. Dotson's lawsuit was filed in violation of Tennessee Code Annotated Section 41-21-812.

**Discovery**

In October 2010, Mr. Dotson propounded discovery requests on both of the Appellees. Neither Appellee answered the requests; rather, on December 3, 2010, the Appellees filed a motion to dismiss. This motion included a request for a protective order, relieving Appellees of the obligation to respond to Mr. Dotson's discovery request. The trial court granted the stay of discovery by order of December 14, 2010.

It is well-settled in Tennessee that the trial court has wide discretion over discovery matters. ***Benton v. Snyder***, 825 S.W.2d 409, 416 (Tenn. 1992). "The decision of the trial court in discovery matters will not be reversed on appeal unless a clear abuse of discretion is demonstrated." ***Paine v. Ramsey***, 591 S.W.2d 434, 436 (Tenn. 1979). An abuse of discretion occurs when "the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence." ***Id***.

In the instant case, we conclude that trial court properly exercised its discretion in granting the Appellees' a stay of discovery pending ruling on the motion to dismiss. The problem here is that we find nothing in the record to indicate that the trial court ever lifted the stay before ruling on the motion for summary judgment.

The trial court based the grant of summary judgment, in part, upon its conclusion that the Article was protected under the fair reporting privilege. As stated by this Court, in ***Smith***

***v. Reed***, 944 S.W.2d 623 (Tenn. Ct. App. 1996), *perm. app. denied* (Tenn. May 5, 1997):

> It was recognized at common law that public interest requires information to be disseminated in public judicial proceedings. As a result, a qualified privilege was recognized for newspapers which make reports of judicial proceedings to the public, in order that members of the public may be apprised of what takes place in the proceedings without having been present. This qualified privilege requires that the report be a fair and accurate summation of the proceeding. ***Langford v. Vanderbilt University***, 44 Tenn. App. 694, 706, 318 S.W.2d 568, 574 (Tenn. App.1958). The report does not have to be a verbatim, technically accurate account in every detail; so long as it gives a "correct and just impression of what took place in Court." ***Langford***. The elements of balance and neutrality are required. *See* ***Street v. National Broadcasting Co.***, 645 F.2d 1227, 1233 (6th Cir.,), cert. granted, 454 U.S. 815, 102 S.Ct. 91, 70 L.Ed.2d 83, cert. dismissed, 454 U.S. 1095, 102 S.Ct. 667, 70 L.Ed.2d 636 (1981).

***Id***. at 625. The Appellees argued (and the trial court presumably found) that, by comparing the Article to Agent Parker's testimony, there can be no doubt that Mr. Branston gave a "fair and accurate summation of the proceeding." Consequently, the court granted dismissal on the ground that the Article was protected under the fair reporting privilege. Mr. Dotson, on the other hand, contends that he was not allowed discovery in order to develop his theories. We agree. While we concede that it seems unlikely that Mr. Dotson will be able to overcome the evidence presented by the Appellees (i.e., the transcript of Agent Parker's testimony and the Article), the court failed to allow Mr. Dotson that opportunity.

Disposition by summary judgment is a burden-shifting process. Consequently, once Appellees established that Mr. Branston's reporting was fair and accurate, the burden shifted to Mr. Dotson to put forth evidence to dispute that. As discussed in detail above, he could satisfy that burden by, among other things: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial. . . ." ***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d at 84. It appears from the record that Mr. Dotson did move the court to compel discovery in this case; however, there is no indication that the trial court either ruled on that motion, or otherwise lifted the stay. Rather, it appears that the trial court relied solely upon Appellees evidence and presumed that Mr. Dotson could discover nothing to counter it. In the absence

of discovery, the trial court's presumption defeats the concurrent goals of fair play and substantial justice. Even if Mr. Dotson is ultimately unsuccessful in countering Appellees' evidence, he must nonetheless be given the opportunity to do so. In short, the discovery process is necessary to allow Mr. Dotson a fair chance to meet his burden on summary judgment. Until such time as he has that opportunity, the grant of summary judgment is premature. Therefore, we vacate the grant of summary judgment on this ground and remand for the purpose of allowing Mr. Dotson the opportunity to propound discovery on Mr. Branston. Once discovery is concluded, the trial court may revisit the question of summary judgment.

## Frivolous Appeal Damages

Finally, Appellees argue that Mr. Dotson's appeal is frivolous and that they should be awarded reasonable attorney's fees expended in defense of this appeal pursuant to Tennessee Code Annotated Section 27–1–122.[7] The decision to award damages based on the filing of a frivolous appeal rests solely in the discretion of this Court. *Whalum v. Marshall*, 224 S.W.3d 169, 180 (Tenn. Ct. App.2006). "Imposing a penalty for a frivolous appeal is a remedy which is to be used only in obvious cases of frivolity and should not be asserted lightly or granted unless clearly applicable, which is rare." *Henderson v. SAIA, Inc* ., 318 S.W.3d 328, 342 (Tenn. 2010). An appeal is frivolous when it has "no reasonable chance of success," *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App.1999), or is "so utterly devoid of merit as to justify the imposition of a penalty." *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.3d 202, 205 (Tenn. 1978). Upon our review of the record, we decline to award the Appellees damages for a frivolous appeal.

For the foregoing reasons, we reverse the order of the trial court to the extent that it relies upon Tennessee Code Annotated Section 41-21-812 as a ground for dismissal. We vacate the order of the trial court, granting summary judgment in favor of Mr. Branston on the remaining issues and remand for further proceedings as may be necessary and consistent with this Opinion. The grant of summary judgment in favor of Contemporary Media, Inc. d/b/a The Memphis Flyer is affirmed. Costs of this appeal are assessed one-half to the Appellant, Andre Dotson, and one-half to Appellee John Branston. Because Appellant is

---

[7] Tennessee Code Annotated Section 27–1–122 states:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

proceeding as a pauper in this appeal, execution may issue against both Mr. Dotson and Mr. Branston for costs of the appeal if necessary.


_____
J. STEVEN STAFFORD, JUDGE