STATE *v.* ALLMAN *et àl.*

(*Nashville,* December Term, 1933.)

Opinion filed Feb. 27, 1934.

WITT & CARROLL, of Madisonville, for appellant.

HORACE VAN DEVENTER, of Knoxville, for appellees.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is a general tax suit brought to collect from various named defendants delinquent state and county taxes on lands lying in Monroe county. Horace Van Deventer, a named defendant, answers denying that lands involved in which he owns an undivided half interest are subject to state and county taxes, and by cross-bill he seeks to recover back certain taxes heretofore paid under protest, and to enjoin further proceedings to tax said lands. The chancellor dismissed the cross-bill and Van Deventer appeals. His theory and insistence is that his lands lie within a certain strip of territory, within the confines (or alleged former confines) of Tennessee, extending along the North Carolina state line, twenty miles in width, title to which and dominion over and control of which has passed from the state of Tennessee to the United States of America, so that this state has no longer power to tax lands so situated. The twenty-mile strip is described in the Tennessee Public Acts of 1919, chapter 103, by which it is insisted that the state of Tennessee granted to the United States all its rights in and over this land, surrendering its sovereignty and ceding

its jurisdiction, thus denuding itself of the power to tax lands owned by individuals, including this defendant, therein located. This act is as follows:

"An Act granting to the United States of America all right, title and interest in and to all lands of the State, lying within twenty miles of the Tennessee and North Carolina Boundary line, for the creation of National forests and the preservation and protection of the navigability of navigable streams.

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, That for the purpose of establishing National Forests, in accordance with the provisions of the Act of Congress approved March 1, 1911 (Thirty-sixth Statutes at large, page nine hundred and sixty-one), and Chapter 47 of the Acts of Tennessee for 1901, for the conservation and perpetuation of forest resources and the protection and preservation of the navigability of navigable streams, and those which may be developed for navigable purposes, the State of Tennessee hereby grants unto the United States of America all its right, title and interest in and to any and all lands lying within twenty miles of the boundary line of this State and the State of North Carolina. Provided, that nothing in this Act shall be construed so as to change the present boundary line between the State of Tennessee and the State of North Carolina."

It will be observed that the object of the enactment is to grant the strip of land described for the limited purpose only of "creation of National Forests and the preservation and protection of the navigability of navigable streams;" and that the enactment is "in accordance with the provisions of the Act of Congress approved March 1, 1911, 36 Stat., 961, 963 (known as the Weeks Law), and

chapter 47 of the Acts of Tennessee for 1901," etc. The Act of 1901 is an act whereby the state gives its consent for the United States to purchase or acquire any land that may be needed for a national forest reserve, reserving to the state concurrent jurisdiction over the lands that may be so acquired, and it grants power to Congress to pass laws providing for the acquisition of such property. Thereafter, in 1911, Congress enacted such legislation, by the act above mentioned, which provides that the United States acquires no jurisdiction over or interest in said lands unless and until acquired by purchase or condemnation.

■■ Learned counsel for appellant has shown great diligence and learning in his review of legislation and decisions involving the respective powers of Congress and the states in matters affecting rights over territory taken for different uses and under different grants, but in our view the determination of the issue now before us must rest on a construction of the Tennessee Act of 1919, chapter 103, together with the Acts of 1901, chapter 47, and the Act of Congress, known as the "Weeks Law," both of which are referred to in the body of the Act of 1919, and are to be considered *in pari materia*. It is, of course, well settled that statutes forming a system or scheme should be construed so as to make that scheme consistent in all its parts. *Harris* v. *State*, 96 Tenn., 496, 34 S. W., 1017; *Stonega Coke & Coal Co.* v. *Steel Co.*, 123 Tenn., 428, 131 S. W., 988, 31 L. R. A. (N. S.), 278; *Bird* v. *State*, 131 Tenn., 518, 175 S. W., 554; Ann. Cas., 1917A, 634. And all acts *in pari materia* should be taken together as if one law. *Merriman* v. *Lacefield*, 4 Heisk. (51 Tenn.), 209; *Howard & Herrin* v. *N., C. & St. L. R. Co.*, 153 Tenn., 660, 284 S. W., 894, 46 A. L. R., 1530.

■ Now conceding, but not deciding, that the language of the Act of 1919 without looking to the former legislation therein expressly mentioned might not be construed as an absolute grant and transfer of sovereignty and dominion to the United States, construing that act, as we must, not standing alone, but *in pari materia* with the Acts of 1901, chapter 47, and with the Act of Congress of 1911 (36 Stat., 961), expressly referred to, we think it apparent that the purpose of the Legislature was to make a conditional grant only, conditioned (1) on subsequent acquisition by the United States of all or parts of the territory described as provided for by the Weeks Law, and (2) on the reservation to the state of its "jurisdiction," as expressly provided in section 12 of the Act of Congress (16 U. S. C. A., section 480), by the concluding clause of said section, it being provided that the state shall not "lose its jurisdiction, nor the inhabitants thereof their rights and privileges as citizens, or *be absolved from their duties as citizens of the State.*" (Italics ours.)

It does not appear (1) that lands of the defendant have as yet been acquired or taken over by the United States; and (2) it appears that when so taken over, if ever, the land will continue to lie in this state, and be subject to the "jurisdiction" of this state, and its private owners will not be "absolved from their duties as citizens of the State," one of which is the payment of lawfully imposed taxes. The instant case is thus distinguished from the holding in the recent case of *Standard Oil Co.* v. *People of State of California* (February 5, 1934), 54 S. Ct., 381, 78 L. Ed., —, and the line of cases cited therein.

It results that the decree of the chancellor dismissing the cross-bill will be affirmed.