IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 27, 2012 Session

## GREGORY L. SMITH v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Macon County**
**No. 2011CV118      John Wooten, Judge**

---

**No. M2012-00115-COA-R3-CV - Filed July 17, 2012**

---

This case involves the denial of a handgun carry permit by the Department of Safety to an individual who had previously been convicted of a felony and sentenced to two years in the Department of Correction. The applicant appealed to the General Sessions Court, which reversed the decision of the Department of Safety. The Department of Safety then appealed to Circuit Court, which affirmed the General Sessions Court and held that the applicant was entitled to obtain a handgun carry permit because his full civil rights had been restored upon the issuance of a Certificate of Restoration of Voting Rights. We hold that the applicant is not entitled to obtain a handgun carry permit pursuant to Tennessee law because the applicant's right to seek and hold public office has not been restored by a court of competent jurisdiction. Reversed and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M., KIRBY, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Whitehouse, Assistant Attorney General; William E. Young, Solicitor General; Lyndsay F. Sanders, Senior Counsel, for appellant, State of Tennessee.

Gregory L. Smith, Westmoreland, Tennessee, Pro Se.

### OPINION

### I. Background

In 1988 Plaintiff/Appellee Gregory L. Smith pleaded guilty to the crime of possession of a Schedule VI controlled substance, for which Mr. Smith was sentenced to serve two years in the Department of Correction. According to his brief, Mr. Smith was released from prison after serving seven months, and subsequently served another year and a half on parole. Upon completion of his parole, Mr. Smith received a Certificate of Restoration of Voting Rights from his parole officer.

On August 3, 2011, Mr. Smith applied to the Defendant/Appellant Tennessee Department of Safety ("Department of Safety") for a handgun carry permit. On the application, Mr. Smith disclosed that he had been convicted of felony possession of a Schedule VI controlled substance and stated that he had obtained full restoration of his rights. On August 18, 2011, the Department of Safety denied the handgun carry permit on the ground that Mr. Smith's right to seek and hold public office had not been restored, making him ineligible to obtain a handgun carry permit.

On September 12, 2011, Mr. Smith filed a petition in the General Sessions Court for Macon County seeking review of the Department of Safety's denial of his application to obtain a handgun carry permit. The matter was heard on September 28, 2011. The General Sessions Court reversed the decision of the Department of Safety and ruled that Mr. Smith was eligible to obtain a handgun carry permit. The Department of Safety filed a notice of appeal to the Circuit Court of Macon County. In an order entered on December 8, 2011, the Circuit Court affirmed the ruling of the General Sessions Court that Mr. Smith was eligible for a handgun carry permit. The Department of Safety filed a notice of appeal to this Court on January 5, 2012. Also on January 5, 2012, the Department of Safety sought a Motion to Stay Pending Appeal, which was denied by the trial court on January 12, 2012. On February 13, 2012, the Department of Safety filed a motion in this Court for review of the trial court's denial of the motion for stay pending appeal. On February 15, 2012, this Court granted the stay on the issuance of Mr. Smith's handgun carry permit.

## II. Standard of Review

We review the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's conclusions of law and our review is *de novo*. *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006) (citing *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000)).

## III. Analysis

The Department of Safety submits one issue for review, which we restate:

Whether the circuit court erred in reversing the Department of Safety's denial of [Mr. Smith's] application for a handgun permit . . . , where [Mr. Smith] was previously convicted of a felony drug offense but has received a "Certificate of Restoration of Voting Rights" from his parole officer.

Both Federal and Tennessee statutes concern the possession of firearms. Pursuant to Tennessee Code Annotated Section 39-17-1351, any lawful resident of Tennessee over the age of twenty-one (21) may apply to the Department of Safety to obtain a handgun carry permit:

> (a) The citizens of this state have a right to keep and bear arms for their common defense; but the general assembly has the power, by law, to regulate the wearing of arms with a view to prevent crime.
> (b) Except as provided in subsection (r), any resident of Tennessee who is a United States citizen or permanent lawful resident, as defined by § 55-50-102, who has reached twenty-one (21) years of age, may apply to the department of safety for a handgun carry permit. If the applicant is not prohibited from purchasing or possessing a firearm in this state pursuant to § 39-17-1316 or § 39-17-1307(b), 18 U.S.C. § 922(g), or any other state or federal law, and the applicant otherwise meets all of the requirements of this section, the department shall issue a permit to the applicant.

However, the plain language of Tennessee Code Annotated Section 39-17-1351 provides that the Department may only issue a permit to an individual if he or she "is not prohibited from purchasing or possessing a firearm in this state pursuant to § 39-17-1316 or § 39-17-1307(b), 18 U.S.C. § 922(g), or any other state or federal law."

Mr. Smith does not dispute that upon his conviction for possession of a Schedule VI controlled substance, he was prohibited under Tennessee Code Annotated Section 39-17-1307(b) from possessing a handgun. Tenn. Code Ann. § 39-17-1307(b)(1) (1989), *amended by* 2008 Pub.Acts, c. 1166, § 1, effective July 1, 2008 (making it a criminal offense for an individual "convicted of a felony drug offense" to possess a handgun). Tennessee law also provides that an individual will not be entitled to obtain a handgun carry permit if he or she is prohibited from doing so pursuant to federal law. *See* Tenn. Code Ann. § 39-17-1351(b) (requiring that the applicant for a handgun carry permit not be prohibited from purchasing or possessing a firearm under 18 U.S.C. § 922(g)). Pursuant to federal law, "a

person convicted in any court of a crime punishable by imprisonment for a term exceeding one year" is prohibited from possessing a firearm. 18 U.S.C. § 922(g)(1) (providing that felons are prohibited from "ship[ping] or transport[ing] in interstate or foreign commerce, or possess[ing] in or affecting commerce, any firearm or ammunition"). Accordingly, due to the firearms disabilities imposed on those convicted of felonies under both Tennessee and Federal law, Mr. Smith is not entitled to obtain a handgun carry permit pursuant to Tennessee Code Annotated Section 9-17-1351(b). Indeed, due to his felony conviction, Mr. Smith not only lost his ability to obtain a handgun carry permit, but also his right to vote, the right to seek and hold public office and the right to sit on a jury. Tenn. Code Ann. § 40-11-112 ("Upon conviction for any felony, it shall be the judgment of the court that the defendant be infamous and be immediately disqualified from exercising the right of suffrage."); Tenn. Code Ann. § 40-20-114 ("Every person convicted of a felony or an infamous crime and sentenced to the penitentiary, . . . is disqualified from qualifying for, seeking or holding any office under the authority of this state . . . ."); Tenn. Code Ann. § 22-1-102 (providing that persons "convicted of certain infamous offenses" are "incompetent to act as jurors")

However, Mr. Smith argues that he is eligible to obtain a handgun carry permit pursuant to Tennessee Code Annotated Section 39-17-1351(j), which provides:

> The department shall not deny a permit application if:
>
> *   *   *
>
> (3) The applicant, who was rendered infamous or deprived of the rights of citizenship by judgment of any state or federal court, *has had the applicant's full rights of citizenship duly restored pursuant to procedures set forth within title 40, chapter 29, or other federal or state law*; provided, however, that the provisions of this subdivision (j)(3) shall not apply to any person who has been convicted of burglary, any felony offense involving violence or use of a firearm or any felony drug offense involving a Schedule I, II, III, IV or V controlled substance. If the applicant has been convicted of a felony drug offense involving a Schedule VI controlled substance, the provisions of this subdivision (j)(3) shall not apply if the offense occurred within ten (10) years of the date of application or renewal.[1]

---

[1] Mr. Smith's conviction for Possession of a Schedule VI controlled substance occurred more than

(continued...)

-4-

(emphasis added). Federal law contains a similar provision. *See* 18 U.S.C. § 921(a)(20) (providing that a felony conviction shall not prevent an individual from obtaining a firearm if the individual "has had civil rights restored"). The Sixth Circuit discussed the federal statute preventing individuals convicted of felonies from possessing firearms in **United States v. Cassidy**, 899 F.2d 543 (6th Cir. 1990). In **Cassidy**, the Sixth Circuit held that when considering whether an individual is prohibited from possessing a firearm due to the federal firearms disability, courts should look to state law to determine if the "state law restored civil rights to [the individual], without expressly limiting the [individual's] firearms privileges." *Id.* at 546. The Sixth Circuit has held that applying Federal and Tennessee law, the rights which must be restored include "the right to vote, the right to seek and hold public office and the right to serve on a jury." *Id.* at 549. Only if these three rights have been restored pursuant to Tennessee law, is Mr. Smith eligible under both Tennessee and Federal law to obtain a handgun carry permit. Accordingly, we look to Tennessee law to determine whether Mr. Smith's full civil rights have been restored for purposes of the Tennessee and Federal firearms disabilities.

According to Mr. Smith, the trial court was correct in ruling that he is eligible to obtain a handgun carry permit because his rights were fully restored pursuant to Tennessee Code Annotated Section 40-29-105 when he was issued a Certificate of Restoration of Voting Rights upon completion of his sentence. In contrast, the Department of Safety argues that the Certificate of Restoration of Voting Rights did not restore Mr. Smith's ability to seek and hold public office, which is governed by Tennessee Code Annotated Section 40-29-114. To decide this issue, we must consider the statutory scheme governing civil disabilities imposed on individuals convicted of felonies, as well as the restoration of those rights.

Our Supreme Court has discussed the nature of the civil disabilities that Tennessee statutes impose upon persons convicted of felonies:

> Virtually every jurisdiction subjects a convicted defendant not only to criminal punishment but also sanctions that restrict civil and proprietary rights. Walter M. Grant et al., Special Project, *The Collateral Consequences of a Criminal Conviction*, 23 Vand.L.Rev. 929 (1970) (hereinafter 'Special Project'). Such restrictions, or civil disabilities, date back to ancient Greece and Rome, when a criminal conviction rendered

---

[1](...continued)
ten years prior to his application for a handgun carry permit. Accordingly, so long as his full civil rights have been restored, he is eligible to obtain a handgun pursuant to Tennessee law. *See* Tenn. Code Ann. §39-17-1351(j)(3).

one 'infamous,' and resulted in the loss of the right to vote, hold office, make speeches or assemble. The sanctions were viewed as retributive and deterrence measures imposed against those who committed crimes because they entailed the loss of rights most cherished by society. Civil disabilities were also imposed in early English common law in the form of 'attainder.' A person convicted of treason or a felony, i.e., attained, was not only subjected to criminal punishment but also the loss of property, voting, and other civil rights. *Id.* at 941–944.

In this country civil disabilities continue to play a significant role in the criminal justice system and generally fall into one of two categories: civil death statutes and specific disability statutes.

Civil death statutes are "blanket provisions that deprive the criminal of [all] rights while he is serving a prison sentence for life or less than life." Special Project, *supra*, at 950. As defined in Black's Law Dictionary, civil death is:

> [t]he state of a person who, though possessing natural life, has lost all civil rights and as to them is considered civilly dead.... In some states, some persons convicted of serious crimes are declared to be civilly dead which means that certain civil rights and privileges of the convicted offender including the right to vote, contract and sue and be sued are forfeited.

*Black's Law Dictionary* 245 (6th ed. 1990); *see also* 21A Am.Jur.2d Criminal Law, § 1032 (1981 & Supp.1997).

In contrast, the other category—specific disability statutes—designate a particular civil disability that occurs upon the conviction and remains in effect throughout the defendant's life unless restored by a specific statutory procedure. Special Project, *supra*, at 951. A civil disability pursuant to such a statute may include the loss of the right to vote, hold office, serve as a juror, possess firearms, and the denial of professional or occupational licensing. [Special Project, *supra*, at 952.].

.

Like the vast majority of states, Tennessee does not have a civil death statute but rather a series of specific disability statutes. These include the loss of the right to vote, *see* Tenn. Code Ann. § 40-20-112; the loss of the right to hold public office, *see* Tenn. Code Ann. § 40-20-114; and the loss of the right to serve as a fiduciary, *see* Tenn. Code Ann. § 40-20-115.

*Cole v. Campbell*, 968 S.W.2d 274, 276–77 (Tenn. 1998). Therefore, to remove a specific disability imposed by the Legislature, an individual must follow the statutory restoration procedure peculiar to that disability. *See State v. Johnson*, 79 S.W.3d 522, 527 (Tenn. 2002) (discussing the nature of "specific disability statutes").

This Court recently discussed the restoration of the right to vote for persons, such as Mr. Smith, convicted of a crime after July 1, 1986, but before July 1, 1996:

> For persons convicted of infamous crimes after July 1, 1986, but before July 1, 1996, restoration of the right to vote was granted by a certificate of restoration issued by the pardoning, supervising, or incarcerating authority, not by the courts. Tenn. Code Ann. § 40-29-105(b)(3). The authority issuing the certificate was required to send a copy to the coordinator of elections. Tenn. Code Ann. § 40-29-105(b)(4). The statute specifically provided that a person eligible for restoration "may request, and then shall be issued a certificate of restoration." Tenn. Code. Ann. § 40-29-105(b)(3). As the U.S. District Court stated, under the immediately prior system, "if he is eligible, his right to vote is restored." [*United States v.*] *White*, 808 F.Supp. [586,] 588 [(M.D. Tenn. 1992)].

*State v. Black*, No. M2000-02935-COA-R3-CV, 2002 WL 1364043, at * 7 (Tenn. App. Ct. June 25, 2002). According to our Supreme Court, the purpose of this statute, referred to as the Restoration Statute, is to "wipe out the transgressions of the offending person and to give him [or her] another chance in society." *Bryant v. Moore*, 198 Tenn. 335, 279 S.W.2d 517, 518 (Tenn. 1955). However, at the time of Mr. Smith's conviction, a separate provision governed the restoration of the right to seek and hold public office:

> Every person convicted of a felony or an infamous crime and sentenced to the penitentiary, either on the state or federal level, is disqualified from qualifying for, seeking or holding any office under the authority of this state unless and until the person's

citizenship rights have been restored by a court of competent jurisdiction.

Tenn. Code Ann. § 40-20-114 (1979), *amended by* 2007 Pub. Acts, c. 325, § 1, eff. July 1, 2007;[2] *see also* Tenn. Code Ann. § 40-20-112 (providing that a person shall be rendered infamous "upon conviction for any felony").

Mr. Smith argues that, pursuant to the Restoration Statute, not only his right to vote and sit on a jury,[3] but also his right to seek and hold public office were restored, citing

---

[2] The current version of Tennessee Code Annotated Section 40-20-11 provides, in pertinent part:

> (a) A person who has been convicted in this state of an infamous crime, as defined by § 40-20-112, other than one specified in subsection (b), or convicted under the laws of the United States or another state of an offense that would constitute an infamous crime if committed in this state, shall be disqualified from qualifying for, seeking election to or holding a public office in this state, unless and until that person's citizenship rights have been restored by a court of competent jurisdiction.

> (b) Notwithstanding the provisions of subsection (a) to the contrary, a person convicted in this state of an infamous crime, as defined by § 40-20-112, or convicted under the laws of the United States or another state of an offense that would constitute an infamous crime if committed in this state, and the offense was committed while that person is holding an elected public office at the federal level, or in this or any other state or any political subdivision of this or any other state, shall be forever disqualified from qualifying for, seeking or holding any public office in this state or any political subdivision of this state, if the offense was committed in the person's official capacity or involved the duties of the person's office. This subsection (b) shall apply even if the person's citizenship rights have been restored, but shall not be construed as limiting the restoration of any other citizenship rights, including the right of suffrage provided for in § 2-2-139, § 2-19-143, or § 40-29-105.

Accordingly, all persons convicted of infamous crimes now must seek restoration of their right to seek and hold public office from "a court of competent jurisdiction," regardless of whether they were sentenced to the penitentiary.

[3] From our research, no specific statute governs the restoration of the right to sit on a jury after a felony conviction. The United States District Court came to the same conclusion in *United States v. White*, 808 F.Supp. 586 (M.D. Tenn. 1992):

> It should be noted that though [the Tennessee Code Annotated Section 40-

(continued...)

Tennessee Code Annotated Section 40-29-105(b), which provides:

> (b) For all persons convicted of infamous crimes after July 1, 1986, but before July 1, 1996, the following procedures shall apply:
>
> (1) A person rendered infamous or deprived of the rights of citizenship by the judgment of any state or federal court *may* have full rights of citizenship restored upon:
>
> * * *
>
> (C) Being granted final release from incarceration or supervision by the board of probation and parole, or county correction authority;

(emphasis added). However, it is well-settled that the use of the word "may" in a statute generally connotes "discretion or permission and will not be treated as a word of command, unless there is something in the context of the subject matter of the statute under consideration to indicate that it was used in that sense." *Steppach v. Thomas*, 346 S.W.3d 488 (Tenn. Ct. App. 2011) (citing *Williams v. McMinn County*, 209 Tenn. 236, 352 S.W.2d 430, 433 (Tenn. 1961)); *see also* *Bd. of County Commr's of Shelby County v. Taylor*, No. 93–1490–I, 1994 WL 420922, at *4 (Tenn. Ct .App. Aug. 12, 1994) (holding that "a provision couched in permissive terms is generally regarded as directory or discretionary"

---

[3](...continued)
29-102] procedure is clearly applicable to the restoration of the right to seek and hold public office, it is not clearly applicable to the restoration of the right to sit on a jury. [Tennessee Code Annotated Section] 22-1-102 makes no mention of how that right can be restored, nor does [Section] 40-29-101 expressly state that the circuit court proceeding will restore the right to serve on a jury. In addition, *State v. Bell*, 745 S.W.2d 858 (Tenn. 1988), a case describing Tennessee's decision to exclude convicted felons from serving on juries, does not mention a procedure for regaining that right. *Id.* at 861.

*Id.* at 589. Here, the Department of Safety does not argue that Mr. Smith is ineligible to obtain a handgun carry permit because his right to sit on a jury has not been restored; the Department of Safety only argues that Mr. Smith's right to seek and hold public office has not been restored. Issues not raised on appeal are considered waived. *See Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002). Accordingly, we only consider the issue of whether Mr. Smith's right to seek and hold public office has been restored.

and "[t]his is true of the word 'may'"). Accordingly, while Tennessee Code Annotated Section 40-29-105(b)(1)(C) provides that an individual's full citizenship rights *may* be restored upon final release from incarceration or parole, the statute does not provide that final release, without more, operates to fully restore an individual's civil rights.

Mr. Smith further argues that his full civil rights have been restored based on Tennessee Attorney General Opinion 97-169 (1997), which appears to state that the automatic procedures outlined in Tennessee Code Annotated Section 40-29-105(c) are sufficient to restore all civil rights to an individual:

> It has been suggested that the General Assembly, by enacting Tenn. Code Ann. § 39-17-1351(j)(3), intended that a felon must obtain restoration of rights through a court proceeding in order to be eligible to obtain a handgun carry permit. In other words, the suggestion is that the General Assembly did not intend that a felon who obtained restoration of rights through the automatic procedure available from July 1, 1986 until June 30, 1996 be able to obtain a handgun carry permit.
>
> The pertinent part of the statute states: "The department shall not deny a permit application if . . . [t]he applicant . . . has had his or her full rights of citizenship duly restored pursuant to the procedures set forth within title 40, chapter 29 . . . ." Tenn. Code Ann. § 39-17-1351(j)(3). Title 40, chapter 29 of the Tennessee Code provides three procedures for the restoration of rights, the procedure applicable to a particular felon depending upon the date of his conviction . . . .
>
> "In construing statutes, [we] must presume that the legislature has knowledge of its prior enactments and knows the state of the law at the time it passes legislation." ***State v. Levandowski***, No. 03-S-01-9611-CR-000116, 1997 WL 610823, at *1 (Tenn. Oct. 6, 1997). In this instance, the tape recordings of the debates in committee and on the floor of both houses concerning this statute evidence that the legislators were well aware of the automatic restoration procedure in place from 1986 to 1996. In the end, however, the General Assembly passed a final bill that did not distinguish between the automatic procedure and the court procedure for restoration of rights for

-10-

purposes of obtaining a handgun carry permit. On this point, the statute is clear and unambiguous. Only "[w]hen the language is ambiguous and does not yield a clear interpretation ... may [we] consult the legislative history for additional interpretive guidance." ***Carter v. State***, 952 S.W.2d 417, 419 (Tenn. 1997). ***Therefore, felons who have had their rights restored under the automatic procedures in place in 1986 to 1996 are eligible to obtain a handgun carry permit, if otherwise qualified.***

Tenn. Att. Gen. Op. 97-169, n.7 (1997) (emphasis added). Based on this opinion, Mr. Smith argues that the Certificate of Restoration of Voting Rights issued to him by his parole officer restored all his civil rights and made him eligible to obtain a handgun carry permit.

In contrast, the Department of Safety points to a later opinion involving this issue, which specifically retracts portions of Tennessee Attorney General Opinion 97-169 with regard to individuals who had been sentenced to the penitentiary, such as Mr. Smith.

> Tenn. Code Ann. § 40-20-114 provides that felons or infamous criminals sentenced to the penitentiary may have their rights to seek and hold public office restored only when citizenship rights have been restored by a court of competent jurisdiction. This suggests that the certification that conditions such as release or expiration of sentence have been met under Tenn. Code Ann. § 40-29-105(b) will not restore all rights in penitentiary sentence cases.

> Tenn. Code Ann. § 39-17-1351(b) requires that the applicant for a handgun permit not be prohibited from purchasing or possessing a firearm under 18 U.S.C. § 922(g). The federal statute prohibits gun possession or purchase by persons convicted of a crime punishable by imprisonment exceeding one year. This prohibition can be removed if the convicting state has restored "civil rights" to the felon, without expressly limiting firearm privileges. 18 U.S.C. 921(a)(20).

> \* \* \*

> ***United States v. White***, [ 808 F.Supp. 586 (M.D. Tenn. 1992)], provides case authority for the requirement of a court order for

-11-

removal of handgun permit disabilities in certain 1986–96 cases. In that case, the court stated that the restoration of rights certificate provisions of Tenn. Code Ann. § 40-29-105 concern the restoration of voting rights. The court cited Tenn. Code Ann § 40-29-114, requiring a court order to restore the rights to seek and hold public office to a felon who has been sentenced to the penitentiary. The court directed that a felon who has been sentenced to the penitentiary must follow the procedure in Tenn. Code Ann. §§ 40-29-101– 102 to accomplish this. *White*, at 588.

There is state court authority in accord with this conclusion. In *State v. Black*, 2002 WL 1364043 (Tenn. Ct. App. June 25, 2002), the court, citing *White*, mentioned that there are two distinct restoration procedures for 1986–96 felons. These are: the certificate for the right to vote and a court order for the rights to seek and hold public office. *Black*, at *6. The question then is whether an otherwise eligible penitentiary-sentenced 1986–96 felon would need both a court order and a certificate to qualify for a handgun permit, or whether a court order alone would suffice.

The necessity to obtain a court order in some 1986–96 cases involving persons sentenced to the penitentiary is created by Tenn. Code Ann. § 40-20-114. That law speaks in terms of an order restoring "citizenship rights," which can be restored to such persons "by a court of competent jurisdiction." The "court of competent jurisdiction" is the circuit court, Tenn. Code Ann. § 40-29-101, and the procedure is set forth in Tenn. Code Ann. §§ 40-29-102–104. These statutes do not by context or otherwise limit themselves to a particular right. Therefore, although the question is not free from doubt, it appears that an otherwise eligible 1986–96 felon sentenced to the penitentiary who obtained a court order restoring his citizenship rights under this section would not be required to also present a certificate in order to obtain a handgun permit.

***Thus the Department of Safety is not authorized to accept a penitentiary-sentenced felon's § 40-29-105(b) certificate as sufficient proof that federal firearms disabilities have been removed. Such felons must present a court order restoring***

***citizenship rights.*** As to felons convicted between July 1, 1986, and July 1, 1996, and not sentenced to the penitentiary, a certificate of restoration is necessary.

This office has previously addressed issuance of handgun permits to felons in general. Tenn. Op. Atty. Gen. No. 97-169. Neither the question presented in that opinion, nor the analysis, specifically dealt with felons who were sentenced to the penitentiary. To the extent that the previous opinion could be read to suggest that otherwise eligible penitentiary-sentenced inmates have their full rights of citizenship restored for handgun purposes by issuance of a certificate of restoration, it is hereby withdrawn.

\* \* \*

For the reasons set forth above, ***an otherwise eligible felon convicted during the 1986-1996 period and sentenced to the penitentiary must obtain restoration of his or her "citizenship rights" by court order before obtaining a handgun permit.*** The means for accomplishing such restoration is suggested by the following excerpt from ***White***:

> The reference in T.C.A. § 40-20-114 to the restoration of citizenship rights by a "court of competent jurisdiction" refers to the procedures outlined in T.C.A. § 40-29-101 and § 40-29-102.

***White***, at 588.

The procedure requires the filing of a petition in circuit court in the county of the felon's residence or conviction with proper notice to prosecutors and satisfactory proof of character. Tenn. Code Ann. §§ 40-29-102–103.

Tenn. Op. Atty. Gen. 02-119 (2002) (footnotes omitted) (emphasis added). According to this opinion, the automatic procedures outlined in Tennessee Code Annotated Section 40-29-105(b)(3) are sufficient to fully restore the civil rights of an individual convicted of a felony, but not sentenced to a penitentiary. However, for an individual convicted of a felony

*and* sentenced to the penitentiary, the individual must separately seek restoration of his or her right to seek and hold public office pursuant to Tennessee Code Annotated Section 40-20-114, which requires a proceeding in "a court of competent jurisdiction."

To determine whether Tennessee Code Annotated 40-20-114 indeed provides that an individual sentenced to the penitentiary is required to seek restoration of his or her right to seek and hold public office through a court proceeding, even if the individual was convicted of a felony prior to 1996, we must employ the rules of statutory construction. The Tennessee Supreme Court recently reiterated the rules, stating:

> Our role is to determine legislative intent and to effectuate legislative purpose. [***Lee Med., Inc. v. Beecher***, 312 S.W.3d 515, 526 (Tenn. 2010)]; ***In re Estate of Tanner***, 295 S.W.3d 610, 613 (Tenn. 2009). The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose. *See **Lee Med., Inc.***, 312 S.W.3d at 526; ***Hayes v. Gibson Cnty.***, 288 S.W.3d 334, 337 (Tenn. 2009); ***Waldschmidt v. Reassure Am. Life Ins. Co.***, 271 S.W.3d 173, 176 (Tenn. 2008). When the language of the statute is clear and unambiguous, courts look no farther to ascertain its meaning. *See **Lee Med., Inc.***, 312 S.W.3d at 527; ***Green v. Green***, 293 S.W.3d 493, 507 (Tenn. 2009).

***Mills v. Fulmarque***, 360 S.W.3d 362, 368 (Tenn. 2012).

Giving the words in Tennessee Code Annotated 40-20-114 their plain and ordinary meaning, we must agree with both the Department of Safety and the Tennessee Attorney General. Tennessee Code Annotated Section 40-20-114, as it existed when Mr. Smith pleaded guilty to felony possession of a Schedule VI controlled substance, clearly provides that for an individual sentenced to the penitentiary, he or she must seek restoration of the right to seek and hold public office through a proceeding in "a court of competent jurisdiction." Tennessee Code Annotated Section 40-20-114 is part of a broad statutory scheme involving the rights lost to individuals based on felony convictions and the procedures required to restore those rights. As such, we must interpret the statutes *in pari materia*, so as to make that scheme consistent in all its parts. ***Wells v. Tennessee Bd. of Regents***, 231 S.W.3d 912, 917 (Tenn. 2007); ***Lyons v. Rasar***, 872 S.W.2d 895, 897 (Tenn. 1994); ***State v. Allman***, 68 S.W.2d 478, 479 (Tenn. 1934). Courts are required to construe a statute, or set of statutes, "so that the component parts are consistent and reasonable." ***In re Sidney J.***, 313 S.W.3d 772, 775 (Tenn. 2010) (quoting ***Cohen v. Cohen***, 937 S.W.2d 823,

827 (Tenn. 1996)).  Accordingly, we must construe Tennessee Code Annotated Section 40-20-114 so that it is consistent with the broad statutory scheme involving restoration of rights to individuals convicted of felonies. Taking the statutory scheme as a whole, we agree with the United States District Court that the proceeding by "a court of competent jurisdiction" to restore the right to seek and hold public office clearly refers to a proceeding in the circuit court pursuant to Tennessee Code Annotated Section 40-29-102–4. *See White*, 808 F.Supp. at 588. Thus, the issuance of a Certificate of Voting Rights by the parole board is insufficient to also restore an individual's right to seek and hold public office when the individual has been sentenced to the penitentiary. *See State v. Black*, No. M2000-02935-COA-R3-CV, 2002 WL 1364043, at * 7 (Tenn. App. Ct. June 25, 2002) (drawing a distinction between the restoration of the right to seek and hold public office and the restoration of other civil rights). Without the restoration of the right to seek and hold public office, an individual convicted of a felony and sentenced to a penitentiary has not had his or her full civil rights restored. The result is that the individual is prohibited from possessing a firearm pursuant to both Tennessee and Federal law.

It is undisputed that Mr. Smith was sentenced to the penitentiary for two years when he pleaded guilty to the crime of possession of a Schedule VI controlled substance for resale. Because Mr. Smith was sentenced to the penitentiary, he was required to file a petition in Circuit Court to attain restoration of his right to seek and hold public office.  It is also undisputed that Mr. Smith did not petition the Circuit Court to have his right to seek and hold public office restored. Mr. Smith's right to seek and hold public office was removed in 1988 as a result of his guilty plea and the right has never been restored. Because his full civil rights have not yet been restored, Mr. Smith is ineligible to obtain a handgun carry permit under Tennessee and Federal law. Accordingly, we reverse the judgment of the trial court and reinstate the determination of the Department of Safety denying Mr. Smith's application for a handgun carry permit.

## IV. Conclusion

Based on the foregoing, the judgment of the Circuit Court of Macon County is reversed, and this cause is remanded for all further proceedings as may be necessary and consistent with this opinion. Costs of this appeal are assessed to Plaintiff/Appellee Gregory L. Smith, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

-15-