IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 2, 2016 Session


**AT&T MOBILITY II LLC ET AL. v. RICHARD H. ROBERTS,
COMMISSIONER OF REVENUE, STATE OF TENNESSE**

**Appeal from the Chancery Court for Davidson County
No. 111528I, 111529I     Claudia Bonnyman, Chancellor**

_____

**No. M2015-01118-COA-R3-CV-Filed September 30, 2016**
_____


Taxpayer filed a claim with the Tennessee Department of Revenue for refund of sales taxes of approximately $24 million that it erroneously collected from approximately 800,000 of its customers and paid to the Department.  Over the course of the next three and a half years, representatives of the Department and the taxpayer worked together to identify and provide information in a format that would facilitate the review.  While the claim was being reviewed, the taxpayer filed suit in chancery court; the parties continued to work to resolve the claim, and the court extended the disposition date of the suit.  In due course, the Department refunded approximately $19 million, plus a portion of the interest sought by the taxpayer; the case proceeded to trial to determine whether the applicable statute permitted the taxpayer to recover additional interest.  The court determined that the claim was resolved by the administrative review rather than by the court and awarded interest from the date the taxpayer supplied proper proof to the Department; the court also awarded costs and attorneys' fees to the Commissioner.  Taxpayer appeals.  Finding no error, we affirm the judgment of the Chancery Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which KENNY W. ARMSTRONG and BRANDON O. GIBSON, JJ., joined.

Gail Vaughn Ashworth, Nashville, Tennessee; Margaret C. Wilson, _pro hac vice_, Somerville, New Jersey, for the appellants, AT&T Mobility II LLC and Chattanooga MSA LP.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Mary Ellen Knack, Senior Counsel, Nashville, Tennessee, for the appellee, Richard H. Roberts, Commissioner of Revenue, State of Tennessee.

Brett R. Carter, Patricia Head Moskal, and Joseph W. Gibbs, Nashville, Tennessee, for the *amicus curiae*, Tennessee Chamber of Commerce and Industry.

## OPINION

## I. FACTUAL AND PROCEDURAL HISTORY

In November 2010, AT&T Mobility II LLC and Chattanooga MSA LP, (herein "AT&T"), filed separate claims with the Tennessee Department of Revenue ("Department") pursuant to Tennessee Code Annotated § 67-1-1802(a), seeking a total refund of $24,038,222.38, plus interest, for the sales tax on Internet access services AT&T mistakenly charged its customers from November 1, 2005 through September 7, 2010.[1] With the refund claims, AT&T provided a list of nearly 800,000 Tennessee customers[2] from whom it had erroneously collected sales taxes and identified the amount it had collected from each customer, as well as a list "showing how much tax overall for that particular month for that particular jurisdiction was collected in error."[3] As more fully explained *infra*, the parties worked together for more than three years to provide additional information the Commissioner of Revenue (the "Commissioner") needed to complete the review. Because the refund claims were not resolved within six months of filing, they were deemed denied by operation of § 67-1-1802(b)(2). AT&T filed complaints pursuant to Tennessee Code Annotated §67-1-1802(c)(1) on behalf of both entities in Davidson County Chancery Court on November 8, 2011; the suits were consolidated by the chancellor.

---

[1] AT&T's refund claim was necessitated by a settlement AT&T had reached in a class action lawsuit brought by its customers premised upon the Internet Tax Freedom Act, PL 105–277, October 21, 1998, 47 U.S.C. § 151 note. The settlement required AT&T to seek refunds of the sales taxes and transfer all refunded monies into an escrow account for the benefit of the settlement class.

[2] This customer figure comes from the testimony of Scott Adams, lead tax accountant at AT&T. At oral argument, counsel for AT&T said the number of customers affected in Tennessee was 735,223.

[3] This quotation is from the testimony of Mr. Adams. In the course of the hearing, counsel for AT&T filed Exhibit 1, which contains three DVDs containing what counsel called "customer-identifying information"; the court placed the exhibit under seal. Each DVD contained identical files, which Mr. Adams testified "contain the two spreadsheets . . . the one customer detail showing how much tax was overcollected by customer and the second one by jurisdiction by month." For each disc contained in Exhibit 1, we were able to access an index which shows four files. The contents of the files are password protected, and neither the record nor the transcript of the trial contains the password; thus we are unable to view the lists themselves. In our analysis we have relied on the testimony of the witnesses relating to these two data files, specifically Mr. Adams and Bill Stinson, tax auditor at the Department of Revenue.

In June 2012, AT&T amended the refund claim after the parties agreed that $1.8 million of the amount sought was barred by the applicable statute of limitations. On May 15, 2014, the Commissioner issued checks to each AT&T entity for refund of the taxes collected and interest, and the next day the parties filed a joint motion to extend the disposition date, in which they represented to the court that "the Defendant Commissioner of Revenue has granted the Plaintiffs' refund claims and has issued refund checks that resolve most of the amounts at issue," and that they were "continuing to work together to resolve any remaining issues and amounts that may be due the Plaintiffs." In September 2014, the Commissioner issued additional checks to each entity for a refund of taxes and interest; the total amount paid by the Commissioner was $19,299,854.77 in refunds and $62,293.49 in interest. In an order entered three days before trial, the court found that "[m]ost issues have been resolved, but issues involving pre-judgment interest remain to be tried."

A bench trial was held on October 6, 2014, and five witnesses testified: Scott Adams, lead tax accountant at AT&T; and Department employees Bill Stinson, an auditor; Rose McClurkan and Hal Jones, tax audit managers; and Britt Wood, tax audit supervisor. Twenty-two exhibits were admitted into evidence, including a stipulation of facts, signed by counsel for both parties, which stated, "The amount of interest remaining in dispute is $4,696.694.29."

After ruling from the bench on April 23, 2015, the chancellor entered a final order on May 15, 2015, incorporating the transcript of the oral ruling and making the following findings of fact:

> 1. In November 2010, Plaintiffs, AT&T Mobility II LLC and Chattanooga MSA LP, filed claims for refund with Defendant, Richard H. Roberts, Commissioner of Revenue for the State of Tennessee, seeking tax refunds in excess of $24 million for sales taxes that Plaintiffs had collected from their customers in error.
>
> 2. The Commissioner continued to review Plaintiffs' claims for refund after this action was filed in November 2011, and in May and September 2014, the Commissioner paid refunds to Plaintiffs in the total amount of $19,362,148.28, consisting of tax of $19,299,854.79 and interest of $62,293.49.
>
> 3. At trial, Plaintiffs sought additional interest in the amount of $4,696,694.29 on the sales tax refunds paid to Plaintiffs by the Commissioner based upon the interest provision for court-ordered tax refunds found at Tenn. Code Ann. § 67-1-801(b)(2).

3

4. The Court finds that the Commissioner determined that Plaintiffs were entitled to the sales tax refunds following an administrative review of Plaintiffs' refund claims. This Court did not order the refunds.

5. Interest therefore began to accrue beginning forty-five days from the date that the Commissioner received proper proof to verify that the refunds were due and payable, as provided in Tenn. Code Ann. § 67-1-801(b)(1).

6. The Commissioner received proper proof to verify that the refunds were due and payable on March 19, 2014, and properly paid interest beginning forty-five days from that date, as required by Tenn. Code Ann. § 67-1-801(b)(1).

7. The Commissioner has therefore paid all of the interest that is due on the sales tax refunds paid to Plaintiffs.

The court denied AT&T's claim for additional interest in the amount of $4,696,694.29 and assessed costs against AT&T. The chancellor designated the order as a final, appealable judgment pursuant to Tenn. R. Civ. P. 54.02.

AT&T appeals, raising the following issues for our review:

1. Did the Chancellor err in finding that AT&T Mobility's refunds were determined "by administrative review" pursuant to Tenn. Code Ann. § 67-1-801(b)(1) and not refunds paid by court order under Tenn. Code Ann. § 67-1-801(b)(2), thus denying AT&T Mobility's claim for additional interest of $4,696,694.29?

2. Did the Chancellor err in holding that the Commissioner did not receive "proper proof" with respect to whether AT&T Mobility's refunds were due and payable until March 19, 2014, thus denying AT&T Mobility's claims for additional interest of $4,696,694.29?

3. Did the Chancellor err in assessing court costs against AT&T Mobility?

## II. STANDARD OF REVIEW

Our review of this non-jury case is "*de novo*, with a presumption of correctness as to the Trial Court's findings of fact balanced against the preponderance of evidence in the record, with great weight accorded the Trial Court's findings of credibility of witnesses"; the court's "conclusions of law are subject to *de novo* review." *Apollo Shores Cmty. & Maint., Inc. v. Lynn*, No. E1999-00946-COA-R3-CV, 2000 WL 796126, at *2 (Tenn. Ct. App. June

4

21, 2000) *(citing Quarles v. Shoemaker,* 978 S.W.2d 551, 552-53 (Tenn. Ct. App. 1998); *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996)).

> We review the trial court's interpretation of a statute *de novo* with no presumption of correctness. *See Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011); *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012). In construing a statute, our primary purpose is to give effect to the purpose of the legislature. *Lipscomb v. Doe,* 32 S.W.3d 840, 844 (Tenn. 2000). The Tennessee Supreme Court has outlined the applicable principles that apply to the question of statutory interpretation:

>> When dealing with statutory interpretation ... our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.,* 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.,* 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson,* 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.,* 202 S.W.3d 99, 102 (Tenn. 2006).

*Najo Equip. Leasing, LLC v. Comm'r of Revenue*, 477 S.W.3d 763, 766 (Tenn. Ct. App. 2015), *perm. app. denied* (Oct. 16, 2015) (quoting *Estate of French v. Stratford House,* 333 S.W.3d 546, 554 (Tenn. 2011).

## III. ANALYSIS

Taxes in Tennessee are governed by and administered in accordance with Title 67 of the Tennessee Code. This appeal involves the application of "'Taxpayer Remedies for Disputed Taxes' law, codified at Tenn. Code Ann. § 67-1-1801 *et seq.* . . .[;] '[t]he procedure established by this part is the sole and exclusive jurisdiction for determining liability for all taxes collected or administered by the commissioner of revenue...'" *Higdon v. State*, 404 S.W.3d 478, 482-83 (Tenn. Ct. App. 2013) (quoting Tenn. Code Ann. § 67-1-1804 (2011)). The underlying matter does not involve an incorrect assessment of taxes; rather, it involves a claim for a refund for sales taxes mistakenly collected by AT&T in contravention of federal and Tennessee law[4] and paid to the Department. Actions to recover taxes

---

[4] In *Level 3 Commc'ns, LLC v. Roberts*, No. M2012-01085-COA-R3-CV, 2013 WL 5373143, at *1 (Tenn. Ct. App. Sept. 20, 2013), this Court observed that "In January 2004, the State published Sales & Use Tax Notice #

voluntarily paid in error are "a matter of legislative grace. . . [and] therefore, entirely creatures of statute, and suits for refunds, credits, or exemptions must comply with the substantive and procedural requirements in the statute." *SunTrust Bank, Nashville v. Johnson,* 46 S.W.3d 216, 223 (Tenn. Ct. App. 2000) (citations omitted); see also *Estate of Boote v. Roberts*, No. M2012-00865-COA-R3-CV, 2013 WL 1304493, at *11 (Tenn. Ct. App. Mar. 28, 2013).

Pursuant to Tennessee Code Annotated § 67-1-1802(a)(1)(A), the Commissioner is empowered to refund to taxpayers "all taxes collected or administered by the commissioner that are, on the date of payment, paid in error or paid against any statute, rule, regulation, or clause of the constitution of this state or of the United States." Such a claim must be filed with the Commissioner "within three (3) years from December 31 of the year in which the payment was made." Tenn. Code Ann. § 67-1-1802(a)(1)(A).[5] Upon receiving a refund claim, the Commissioner is to determine whether a refund is warranted. Tenn. Code Ann. § 67-1-1802(b)(1) (2011). If the Commissioner has not made the decision within six months, "the claim shall be deemed to be denied for the purpose of filing suit in chancery court." Tenn. Code Ann. § 67-1-1802(b)(2). To challenge the denial or deemed denial of a refund claim, a taxpayer must file suit within one year of the date the claim was filed with the

---

04–03, which indicated that "Internet access is no longer considered a taxable 'telecommunication service' under Tennessee law." Tenn. Code Ann. §67-6-102(93)(B)(vi) (2010) reflects the exclusion of Internet access from the definition of "telecommunications services."

[5] As a prerequisite to filing, the taxpayer must have "refunded or credited the sales or use tax to its customers." Tenn. Code Ann. § 67-1-1802(a)(1). Although there is no proof in the record before us that AT&T satisfied this requirement, the record contains AT&T's representations regarding the class action lawsuit's settlement agreement, including the following language:

> 4. Settlement Class Acknowledges AT&T Mobility Satisfies Any Pre-Payment Requirement
>
> The Settlement Class has acknowledged that its members have already received effective payment of the refund amounts sought in this Refund Claim by virtue of AT&T Mobility's assignment of refund rights to the Settlement Class and its obligation to transfer all refunds received to the Settlement Class, under the terms of the Settlement Agreement and under the supervision of the United States District Court for the Northern District of Illinois.
>
>> In light of AT&T Mobility's obligation to pay the refunded or credited Internet Taxes received by AT&T Mobility to the Escrow Accounts, the Settling Parties agree that AT&T Mobility has assigned and refunded to the Settlement Class all Internet Tax refunds to be sought pursuant to the Settlement Agreement.
>
> The Settlement Class thus waives any requirement that AT&T Mobility pay cash refunds to the Settlement Class prior to obtaining a refund or credit from this taxing jurisdiction.

The Commissioner raised no issue before the trial court or on appeal regarding the requirement to refund or credit the taxpayer's customers.

6

Commissioner. Tenn. Code Ann. § 67-1-1802(c)(1). Trial of the suit is *de novo* by the chancery court. Tenn. Code Ann. § 67-1-1802(c)(2).

When a refund is due, the taxpayer is entitled to interest on the amount of the refund. Tenn. Code Ann. § 67-1-801(b). The date on which interest begins to accrue depends upon how the claim is resolved. "When it is determined by administrative review" that a refund is due, interest "shall be added to the amount of refund or credit due, beginning forty-five (45) days from the date the commissioner receives proper proof to verify that the refund or credit is due and payable." Tenn. Code Ann. § 67-1-801(b)(1). On the other hand, "when it is determined by court order that a person is entitled to a refund or credit of any tax collected or administered by the commissioner, interest shall be added to the amount of refund or credit due, beginning: (A) Forty-five (45) days from the date of filing a claim for refund, pursuant to § 67-1-1802(a) . . ." Tenn. Code Ann. § 67-1-801(b)(2)(A).

The threshold issue in this appeal is whether, for purposes of the calculation of interest, the refund resulted from the Commissioner's processing of the claim or from court adjudication. This involves the interpretation of Tennessee Code Annotated § 67-1-801(b), and our review of the trial court's ruling is *de novo*. *Apollo Shores Cmty. & Maint., Inc.*, 2000 WL 796126, at *2.

## A. Construction and Application of Tenn. Code Ann. § 67-1-801(b)

Tennessee Code Annotated § 67-1-1804 provides that the "procedure established by [Part 18] is the sole and exclusive jurisdiction for determining liability for all taxes collected or administered by the commissioner of revenue." As noted above, the amount of interest on a refund is to be determined in accordance with Tennessee Code Annotated § 67-1-801. "Statutes that are part of a broad statutory scheme should be interpreted *in pari materia,* so as to make that scheme consistent in all its parts." *Najo Equip. Leasing* 477 S.W.3d at 769 (citing *Wells v. Tenn. Bd. of Regents*, 231 S.W.3d 912, 917 (Tenn. 2007); *Lyons v. Rasar,* 872 S.W.2d 895, 897 (Tenn. 1994); *State v. Allman,* 167 Tenn. 240, 68 S.W.2d 478, 479 (Tenn. 1934)). "Our analysis must involve the statute and the relevant counterparts as a whole, and not just one clause of the statute." *Id.* (citing *Shore v. Maple Lane Farms, LLC,* 411 S.W.3d 405, 420 (Tenn. 2013); *State v. Turner,* 913 S.W.2d 158, 160 (Tenn.1995).

AT&T urges that we adopt a construction of Tennessee Code Annotated §§ 67-1-1802 and 1804 that would hold that any audit work done by the Commissioner after suit has been filed "cannot be construed to constitute an 'administrative review'"; accordingly, AT&T argues that the ultimate resolution of this case was in chancery court and interest is to be awarded pursuant to Tennessee Code Annotated § 67-1801(b)(2). Upon our review, however, nowhere do the statutes dictate that the Commissioner's authority to conduct an administrative review process expires when suit is filed; we thus decline to adopt the construction urged by AT&T.

7

AT&T preserved its right to challenge the Commissioner's determination under Tennessee Code Annotated §67-1-1802(c) by filing suit within one year of filing the refund claim. At the request of the parties, the chancellor extended the disposition date for the case numerous times in order to allow the review of the refund claim to be completed. The record shows that the process resulted in the refund that was paid in May and September 2014. When the case progressed to trial, the only issue for the court to resolve was that presented by the application of Tennessee Code Annotated §67-1-801(b), i.e., the date at which interest began to accrue. The trial court did not adjudicate AT&T's entitlement to a refund or the amount of the refund, and, other than the matter of interest, AT&T did not challenge the Commissioner's decision. With respect to the issue presented to it for resolution, the trial court held that "the Commissioner determined that Plaintiffs were entitled to the sales tax refunds following an administrative review of Plaintiffs' refund claims. This Court did not order the refunds."

Upon the record presented, no action by or order of the court resolved the refund claim; thus Tennessee Code Annotated § 67-1-801(b)(2) does not apply. The Commissioner granted the refund after an extensive review and the claim was resolved through the administrative process.[6] By operation of Tennessee Code Annotated § 67-1-801(b)(1), interest on the refund is calculated from the date AT&T provided proper proof of the claim to the Commissioner. We proceed to address this issue.

## B. Proper Proof of the Refund Claim

Prior to and while the suit was pending, the parties were successful in determining the amount of the refund, which the Commissioner paid, along with the portion of interest

---

[6] AT&T and *amicus* urge that we adopt a bright-line rule that, upon the filing of suit in chancery court after the denial or deemed denial of a refund claim, the Department's administrative review process is terminated and the judicial process is commenced. In support of this position, AT&T relies on *Snake Steel, Inc. v. Farr*, Tenn. Ch. Ct, Davidson County, No. 10-435-I (Nov. 29, 2011), wherein the taxpayer filed suit under Tenn. Code Ann. § 67-1-1802 after the claim was deemed denied and prior to the completion of the Commissioner's review. The Commissioner refunded overpaid taxes, and the court held that interest beginning 45 days from the filing of the refund claim was owed to the taxpayer because "[a]fter the refund claim is deemed denied, and most certainly after suit has been filed, it is not possible under the intent of the law, as provided in T.C.A. § 67-1-801(b)(1), for the Claim to still be under administrative review." This argument was presented at the trial court and rejected, with the court stating in the final order that the analysis in *Snake Steel* "was more broad in scope than was necessary." For the reasons set forth in this opinion, we find the argument unavailing.

In like manner, we reject AT&T's argument that Tennessee Code Annotated § 67-1-1804 vests sole and exclusive jurisdiction over refund claims that have been deemed denied due to the passage of time. The statute, which states that the *procedure* set forth in Part 18 is "the sole and exclusive jurisdiction for determining liability for all taxes collected or administered by the statute" incorporates both the administrative processing of a refund claim and the court process available to challenge the Commissioner's determination. The statute is not internally inconsistent and does not operate to divest the Commissioner, once suit has been filed, of the authority to continue to review a refund claim.

8

allowed by the statute consistent with the Commissioner's determination that interest began to accrue in March 2014, when AT&T provided the final invoices. The case proceeded to trial on the question of whether the interest began to accrue 45 days from the filing of the claim in November 2010, as AT&T contended, or as the Commissioner had determined. The chancellor held that "[t]he Commissioner received proper proof to verify that the refunds were due and payable on March 19, 2014, and properly paid interest beginning forty-five days from that date, as required by Tenn. Code Ann. § 67-1-801(b)(1)."

AT&T argues that the chancellor "erred in interpreting the 'proper proof' standard of Tenn. Code Ann. §67-1-801(b)(1) as only being met after a taxpayer provides information responding to the last audit inquiry that the Commissioner chooses to make." AT&T states that "[t]he evidence presented in the trial below prove[s] that, as of receiving the Nov. 9, 2010 Refund Claims, the Commissioner had the proper proof necessary to verify that the refunds were due."[7] The Commissioner argues that the refund could not be made "based upon the initial data files provided by AT&T, which were summary in nature and could not be correlated to AT&T's customer invoices." We review the determination of when proper proof was received as a question of fact and is accordingly reviewed with a presumption of correctness. Tenn. R. App. P. 13(d).

"Proper proof" is not defined in the tax statutes. Tenn. Code Ann. § 67-1-1802(a)(1)(A) requires that a refund claim "must set forth each ground upon which a refund is claimed, the amount of such refund, the tax period, the tax type, and information reasonably sufficient to apprise the commissioner of the general basis for the claim." Tenn. Code Ann. § 67-1-801(b)(1), the interest provision we have held is applicable, provides:

> When it is determined by administrative review that a person is entitled to a refund or credit of any tax collected or administered by the commissioner, and such person is not a debtor as defined in § 67-1-1808, interest shall be added to the amount of refund or credit due, beginning forty-five (45) days from the date the commissioner receives *proper proof to verify that the refund or credit is due and payable.*

(Emphasis added).

The case before us is unique due to the size and the nature of the refund claim, which was complicated by AT&T's billing processes; as more fully explained herein, the Department representatives testified as to the significant challenges presented in verifying the amount of sales tax collected for Internet access. In the oral ruling, the trial court made

---

[7] There is no citation to the record in support of this statement as required by Tenn. R. App. P. 27(a)(7)(A) or Tenn. R. Ct. App. 6(b).

9

extensive findings of fact, none of which are challenged by AT&T, including the following, which we find particularly pertinent to our analysis:

> The plaintiffs complained that the Department demanded data in specific formats and this caused unnecessary delay. The Court finds that the Department was not prepared on the spot to address refunds regardless of the complexity of the industry or the complexity of the errors which were made in paying overtaxes to the Department. It must be remembered that the tax payment was not the result of an assessment made by the Department. The Department was not prepared with a cookie-cutter response to the plaintiffs who made a huge amount — paid a huge amount of taxes in error. There was no formulaic solution to the plaintiffs' refund claims.

We have thoroughly reviewed the record and conclude that the evidence, specifically the testimony of Scott Adams, Bill Stinson, and Britt Wood as summarized below, supports the court's finding.

Mr. Adams testified that he assisted with gathering the information needed to submit the refund claim, which AT&T provided in the form of "summary records" to the Commissioner in November 2010; and that AT&T submitted a list of the nearly 800,000 Tennessee customers affected and how much they were each charged in sales tax, as well as a list that showed how much tax "for that particular month for that particular jurisdiction was collected in error." Mr. Stinson, the auditor assigned to the refund claim, testified that when he looked at the records sent by AT&T, he concluded that he would need more information from AT&T because he had no way to corroborate the data or reconcile it and thus could not verify the amount. Mr. Stinson went to AT&T's Texas offices in January 2011, and he and Mr. Adams discussed performing an audit using a statistical sample of the invoices, rather than a three-month block sample advocated by AT&T.[8] The statistical sample model was decided upon in the second quarter of 2011.

---

[8] Rose McClurkan, a tax audit manager at the Department of Revenue, explained that a statistical sample audit is:

> [A] method of deciding a subset of records to look at other than 100 percent detail of every electronic record received. And we do that by breaking the data set into smaller components, which is called strata[,] which is nothing more than subsets arranged by dollar value, and we assign a range of numbers to pull a random sample from that. . . . [W]e feel it's the more reliable method if you're not able to look at 100 percent of the records, because that scientific approach has years of study behind it. It's impartial because we're using a random number generator[,] and there's no auditor making a determination about which specific item to look at. That's a great way to represent a large number of records without having to look at them in detail.

Mr. Adams testified that in November 2012, AT&T provided additional information to the Department so that it could develop its statistical sample request; after reviewing the data, in March or April of 2013, the auditors requested 962 sample invoices; 730 of those were provided two to three months later. With respect to the 730 samples that were provided, Ms. Wood testified that they only comprised a "very small portion of the sample," roughly $2,000 worth of charges out of the $311,000 charges in the total sample. During Mr. Stinson's and Ms. Wood's trip to AT&T's offices in Texas in January 2014, AT&T provided 61 more invoices as well as a new data file containing a complete description of the relevant billing codes, which Mr. Stinson said helped "finalize the audit because [he] wouldn't have been able to get through those last 100 invoices, which was pretty close to 400,000 pages, without those [billing] codes." The data from the remaining 100 invoices was compiled and sent to the department on March 19, 2014; and Mr. Stinson testified that upon receiving this data, the Department was then in possession of sufficient documentation to make a recommendation of the refund.

This evidence supports the trial court's findings that the data originally provided was not sufficient for the Commissioner to conduct the review of the refund claim. Mr. Scott testified that similar data files were provided with refund claims sent to other states but that AT&T was asked to and provided invoices in the course of those other state's audits. The Tennessee sales tax refund claim form specifically instructs: "Attach a schedule and copies of pertinent invoices, resale certificates, and/or exemption certificates, if applicable and credit memo to customer(s). Attach separate sheet if necessary." AT&T did not include samples of the millions of invoices but instead summarized the taxes charged to each customer.

The Commissioner's staff and AT&T's personnel worked together beginning shortly after the claim was filed to identify the information needed to complete the Commissioner's review of the claim. In light of the number of Tennessee residents affected and the amount of money at stake in this refund claim, there is no proof in the record from which to conclude the Commissioner's review was unreasonable.[9] Under the facts of this case, the review

---

Mr. Stinson testified as follows about the difference between the two methods of sampling that were considered in this audit:

> A three-month sample is – the accuracy can't be verified, whereas a statistical sample, you verify it through calculations as far as what the — the accuracy of your results. A three-month sample is usually used as a convenience when other methods can't be used.

[9] Ultimately, the review process engaged in by the parties resulted in AT&T being awarded nearly $5 million less in refunds than it originally sought. AT&T does not dispute the propriety of the final amount refunded, only the interest awarded. The record makes clear that the parties' agreed that the statute of limitations barred some claims and that AT&T reduced its refund claim upon its discovery that incorrect billing codes had been used, which resulted in inflated amounts being requested in the initial refund claim. These issues, and others, were brought to light during the course of the audit. The trial court found that "certain billing codes did not constitute data service but were inadvertently included in the refund claim," and that "the electric spreadsheets

11

process was uniquely within the purview of the Commissioner and his auditing staff, as the chancery court is ill equipped to conduct such an audit and conclude that a refund is or is not due. AT&T has not cited to proof that preponderates against the court's findings, and our review of the record reveals none. Accordingly, we conclude that the trial court did not err in finding that proper proof, within the meaning of Tenn. Code Ann. § 67-1-801(b)(1) was not supplied until March 14, 2014.

### C. The Award of Costs

Contending that its pursuit of interest was "not only consistent with the applicable statutes, but was also consistent" with another decision of the trial court in a different case, AT&T argues that the trial court erred in awarding court costs against it. Given our holding on the merits, the trial court's award of court costs is affirmed.

In light of our disposition of the issues raised on appeal, we decline to award AT&T its attorneys' fees.

## IV. CONCLUSION

In light of the foregoing, we affirm the judgment of the Chancellor in all respects. We remand this matter for further proceedings in accordance herewith.

_____

RICHARD H. DINKINS, JUDGE

---

summaries [submitted with the refund claim] were not accurate." AT&T does not dispute this factual finding. The complexity of this particular refund claim underscores the need for a thorough review.