# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 29, 2013

## STATE OF TENNESSEE v. CHARLES D. SPRUNGER

**Direct Appeal from the Chancery Court for Cumberland County**
**No. 2010-CH-389     Ronald Thurman, Chancellor**

---

### No.  E2011-02573-COA-R3-CV-FILED-AUGUST 26, 2013

---

This is a forfeiture case.  Appellant was convicted of a Class B felony for sexual exploitation of children pursuant to Tennessee Code Annotated Section 39-17-1003. Appellant tendered his home computer to a repair shop.  Upon examination of the hard drive, the technician discovered unlawful images and notified local law enforcement.  A search warrant was subsequently executed for Appellant's home, where parts of the computer in question were discovered.  After Appellant's arrest, a forfeiture warrant was executed and, after his mortgage indebtedness was satisfied, proceeds from the sale of Appellant's real property were forfeited to the State pursuant to Tennessee Code Annotated Section 39-17-1008.  Appellant appeals the forfeiture of these proceeds.  Discerning no error, we affirm and remand.

### Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,W.S., and DAVID R. FARMER, J., joined.

Charles D. Sprunger, Only, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Benjamin A. Whitehouse, Assistant Attorney General, for appellee, State of Tennessee.

### MEMORANDUM OPINION[1]

---

[1]  Rule 10 of the Rules of the Court of Appeals of Tennessee states:

(continued...)

On July 4, 2008, Appellant Charles D. Sprunger contacted McKinley Tabor, a computer technician in Crossville, Tennessee, complaining that a virus had disabled his personal computer. Mr. Sprunger made arrangements to drop his computer off with Mr. Tabor on July 8, 2008. According to Mr. Tabor's testimony, Mr. Sprunger was anxious to get the computer repaired and informed Mr. Tabor that the computer was used for Mr. Sprunger's business, Trinity Lawn Service. When Mr. Tabor received the computer, it was partially disassembled, and its external shell case had been damaged and partially removed. Upon initial examination of the data stored on the computer, Mr. Tabor found a large number of child-pornography images; he immediately contacted law enforcement.

John Haynes, an investigator with the Cumberland County Sheriff's Department, reviewed the images and obtained a search warrant for Mr. Sprunger's home at 2286 Peavine Road, Crossville, Tennessee (the "Property"). The search warrant was executed on the evening of July 8, 2008. According to Detective Haynes' testimony, when Mr. Sprunger answered the door, the officers explained that the warrant was based upon the images found on Mr. Sprunger's computer and that the officers were at the Property to search for additional child pornography. Detective Haynes testified that Mr. Sprunger responded: "You won't find **anymore**." (Emphasis added). Indeed, the search revealed no additional child pornography in the home; however, the search revealed a room containing computer equipment, including the missing parts of the computer that had been delivered to Mr. Tabor. Exhibit 5 to the October 21, 2011 hearing was a compilation of photos, taken by Detective Haynes, showing the missing parts of the computer in question lying on the floor of Mr. Sprunger's home. In addition, Detective Haynes testified that the room where the missing computer parts were found also contained power outlets and an internet connection.

Detective Haynes testified that Mr. Sprunger was taken into custody and, after being advised of his rights, signed a waiver and agreed to talk with Detective Haynes. Concerning the conversation he had with Mr. Sprunger, Detective Haynes testified:

> He told me that the computer in question that he had dropped off
> at Mr. Tabor's, he had had for two to three years; he had used it
> at his business; he kept it in his home; and he was the only one

[1](...continued)

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

that had access to it.

Based upon this evidence, on May 19, 2009, Detective Haynes obtained a forfeiture warrant for Mr. Sprunger's Property. The forfeiture warrant, which was admitted as trial Exhibit 6, states that Mr. Sprunger was in violation of Tennessee Code Annotated Section 39-17-1004.[2] General York clarified that, although Mr. Sprunger had initially been charged with violation of Section 39-17-1004, the indictment was subsequently amended and the State proceeded against Mr. Sprunger for violation of Section 39-17-1003.

On August 19, 2010, after a jury trial, Mr. Sprunger was convicted of sexual exploitation of a minor under Tennessee Code Annotated Section 39-17-1003.[3] He was

_____

[2] The statute provides:

> (a)(1) It is unlawful for a person to knowingly promote, sell, distribute, transport, purchase or exchange material, or possess with the intent to promote, sell, distribute, transport, purchase or exchange material, that includes a minor engaged in:
> (A) Sexual activity; or
> (B) Simulated sexual activity that is patently offensive.
>
> (2) A person who violates subdivision (a)(1) may be charged in a separate count for each individual image, picture, drawing, photograph, motion picture film, videocassette tape, or other pictorial representation. Where the number of materials involved in a violation under subdivision (a)(1) is greater than twenty-five (25), the person may be charged in a single count to enhance the class of offense under subdivision (a)(4).

[3] The statute provides:

> (a) It is unlawful for any person to knowingly possess material that includes a minor engaged in:
> > (1) Sexual activity; or
> > (2) Simulated sexual activity that is patently offensive.
>
> (b) A person possessing material that violates subsection (a) may be charged in a separate count for each individual image, picture, drawing, photograph, motion picture film, videocassette tape, or other pictorial representation. Where the number of materials possessed is greater than fifty (50), the person may be charged in a single count to enhance the class of offense under subsection (d).
>
> *     *     *

(continued...)

sentenced to eight years in the Tennessee Department of Correction for commission of a Class B felony.

On October 4, 2010, Appellee State of Tennessee (the "State"), through District Attorney General Randy York, filed a complaint for a restraining order under Tennessee Code Annotated Section 39-17-1006,[4] and for judicial forfeiture under Tennessee Code Annotated Section 39-17-1008, which provides, in relevant part: "Any conveyance or real or personal property used in the commission of an offense under this part is subject to forfeiture under the provisions of title 40, chapter 33, part 2." The complaint was filed against Appellant and Highland Federal Savings and Loan Association ("Highland"), seeking

---

[3](...continued)
> (d) A violation of this section is a Class D felony; however, if the number of individual images, materials, or combination of images and materials, that are possessed is more than fifty (50), then the offense shall be a Class C felony. If the number of individual images, materials, or combination of images and materials, exceeds one hundred (100), the offense shall be a Class B felony.

[4] The statute provides:

> If the district attorney general is of the opinion that §§ 39-17-1001 [through] 39-17-1005 are being violated, the district attorney general may file a petition in a circuit, chancery or criminal court of that district relating the opinion, and request the court to issue a temporary restraining order or a temporary injunction enjoining the person named in the petition from removing the material in question from the jurisdiction of the court pending an adversary hearing on the petition. If a temporary restraining order or, after notice, a temporary injunction is so issued, the person enjoined shall answer within the time set by the court, which time shall be set by the court at not more than sixty (60) days. The adversary hearing on the petition shall be held within two (2) days after the joinder of issues. At the conclusion of the hearing, or within two (2) days thereafter, the court will determine whether or not the material in question is in violation of §§ 39-17-1001--39-17-1005. On a finding of a violation, the court shall grant a temporary injunction or continue its injunction in full force and effect for a period not to exceed forty-five (45) days or until an indictment on the matter has been submitted to the grand jury. If forty-five (45) days elapse and the grand jury has taken no action, the injunction terminates. The injunction also terminates on the grand jury returning a no true bill. On the return of a true bill of indictment, the court shall order the material in question delivered into the hands of the court clerk or district attorney general, there to be held as evidence in the case.

forfeiture of Appellant's Property. The complaint acknowledged that the Property was encumbered by a Deed of Trust in favor of Highland, as mortgagor, in the principal sum of $84,000.00, with a balance owing of $47,813.65. Highland had already initiated foreclosure proceedings against the Property at the time the complaint was filed and it was permitted to conclude those proceedings. The trial court then directed that excess proceeds in the amount of $31,606.26 be turned over to the Clerk and Master, and Highland was dismissed from the case.

On October 21, 2011, the trial court heard the forfeiture case. Appellant participated, *pro se*, by telephone. Following the hearing, the court ruled that the State had established that Appellant's Property was subject to forfeiture and ordered that the proceeds from the foreclosure sale be forfeited to the State and divided as provided by statute. On October 24, 2011, the trial court entered a final forfeiture order, which is the subject of this appeal.

Appellant filed a notice of appeal on November 28, 2011.[5] On April 17, 2012, nearly five months after the notice of appeal was filed, Appellant filed a motion in the trial court, seeking to include a transcript of the forfeiture warrant hearing in the record. This transcript was not introduced into evidence at the October 21, 2011 trial, nor did Mr. Sprunger raise any objection regarding the sufficiency of the forfeiture warrant in the trial court. The trial court denied the motion on August 23, 2012, after finding that Appellant had not asked for the transcript during the Chancery Court proceedings and had made no objection to the lack of such a transcript. Appellant filed a second motion on November 15, 2012, seeking to include a transcript of the hearing on the first motion to supplement. The trial court denied the motion on December 13, 2012.

_____

[5] Although the notice of appeal was filed after the thirty day time period set out in Tennessee Rule of Appellate Procedure 4(a), it is undisputed that Mr. Sprunger was being housed at a correctional facility at the time he filed his notice. The record indicates that the notice of appeal was mailed from the correctional facility on November 22, 2011, which was within thirty days of the filing of the final order on October 24, 2011. Tennessee Rule of Appellate Procedure 20(g) provides, in relevant part:

> **Filing by Pro Se Litigant Incarcerated in Correctional Facility**. If papers required or permitted to be filed pursuant to the rules of appellate procedure are prepared by or on behalf of a pro se litigant incarcerated in a correctional facility and are not received by the clerk of the court until after the time fixed for filing, filing shall be timely if the papers were delivered to the appropriate individual at the correctional facility within the time fixed for filing . . . . "Correctional facility" shall include a prison, jail, county workhouse or similar institution in which the pro se litigant is incarcerated . . . .

Mr. Sprunger raises several issues for review. We perceive that there are three dispositive issues, which we state as follows:

> 1. Whether Appellant waived his right to challenge the forfeiture warrant by failing to raise the issue in the trial court?
>
> 2. Whether Tennessee Code Annotated Section 39-17-1008 authorizes the forfeiture of Appellant's Property, which was used to facilitate his commission of the criminal offense of sexual exploitation of a minor under Tennessee Code Annotated Section 39-17-1003?
>
> 3. Whether the evidence was sufficient to support the trial court's order of forfeiture under Tennessee Code Annotated Section 39-17-1008?

Before turning to the issues, we first note that we are cognizant of the fact that Mr. Sprunger has proceeded *pro se* throughout these proceedings. It is well settled that *pro se* litigants are held to the same procedural and substantive standards to which lawyers must adhere. As explained by this Court:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many *pro se* litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a *pro se* litigant and unfairness to the *pro se* litigant's adversary. Thus, the courts must not excuse *pro se* litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Jackson v. Lanphere*, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug.12, 2011) (quoting *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)).

Because this case was tried by the court, sitting without a jury, this Court conducts a *de novo* review of the trial court's decision with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates against those findings. *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater

convincing effect. ***Walker v. Sidney Gilreath & Assocs.***, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); ***The Realty Shop, Inc. v. R.R. Westminster Holding, Inc***., 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). This Court reviews the trial court's resolution of legal issues without a presumption of correctness. ***Johnson v. Johnson***, 37 S.W.3d 892, 894 (Tenn. 2001).

## Waiver of Sufficiency of Forfeiture Warrant

Tennessee Code Annotated Section 40-33-204(b) provides:

> (a) Once personal property is seized pursuant to an applicable provision of law, no forfeiture action shall proceed unless a forfeiture warrant is issued in accordance with this section by a general sessions, circuit, criminal court or popularly elected city judge. The forfeiture warrant shall authorize the institution of a forfeiture proceeding under this part . . . .

> (b) The officer making the seizure shall apply for a forfeiture warrant by filing a sworn affidavit within five (5) working days following the property seizure. The forfeiture warrant shall be based upon proof by affidavit and shall have attached to it a copy of the notice of seizure. **The hearing on the application for a forfeiture warrant shall be ex parte and shall be recorded. It is the duty of the court to maintain the recording. Certified copies of the proceeding shall be made available to any party requesting them, and the same shall be admissible as evidence** . . . .

(Emphasis added).[6] We have reviewed the entire record in this case and it is clear that Mr. Sprunger did not raise any issue concerning the sufficiency of the forfeiture warrant until after he had filed his notice of appeal. Moreover, there is no indication in the transcript of

---

[6] We note that the provisions of Title 40 Chapter 33, as used herein, contain law generally applicable to forfeitures in the State of Tennessee. Title 39, Chapter 17, Section 1008 is a specific forfeiture statute, concerning forfeiture for crimes committed under the Tennessee Protection of Children Against Sexual Exploitation Act. It is well settled that "where the mind of the legislature has been turned to the details of a subject and they have acted upon it, a statute treating the subject in a general manner should not be considered as intended to affect the more particular provision." ***Arnwine v. Union County Bd. of Educ.***, 120 S.W.3d 804, 809 (Tenn. 2003) (quoting ***Woodroof v. City of Nashville***, 192 S.W.2d 1013, 1015 (Tenn. 1946)). Thus, the provisions of a specific statute will control over conflicting provisions in a general statute. ***Id***.

the October 21, 2011 hearing that Mr. Sprunger requested that the transcript of the forfeiture hearing be admitted into evidence. Accordingly, it is clear that the trial court did not consider that transcript in reaching its decision that the Property was the proper subject of the forfeiture. Issues raised for the first time on appeal are generally held to be waived. *Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009); *Black v. Blount*, 938 S.W.2d 394, 403 (Tenn.1996).

Mr. Sprunger argues that he requested the transcript of the forfeiture hearing, per the foregoing statute, sometime prior to the October 21, 2011 hearing. We have reviewed his correspondence with the trial court. Although Mr. Sprunger takes issue with the State's actions in this case, he does not appear to specifically request the transcript of the forfeiture hearing. Nonetheless, even if we allow, *arguendo*, that Mr. Sprunger made a valid request for the transcript, and that the trial court did not follow through on that request, it was incumbent upon Mr. Sprunger to remind the court of the request and to pursue his right to that transcript before the trial court ruled. Accordingly, the latest he could have made a valid request would have been at the October 21 hearing. As noted above, he did not raise this issue at that time; rather, he waited until after the court had ruled. We must conclude, therefore, that Mr. Sprunger has failed to preserve this issue for appeal. It is well established that issues not raised at trial will not be considered for the first time on appeal. *See Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn.1983). "The jurisdiction of this court is appellate only and we consider those issues which are timely brought to the attention of the trial court." *Mallicoat v. Poynter*, 722 S.W.2d 681, 682 (Tenn. Ct. App.1986). Furthermore, Tennessee Rule of Appellate Procedure 36 provides that an appellate court need not grant relief "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a); *see also Alexander v. Armentrout*, 24 S.W.3d 267, 273 n. 9 (Tenn. 2000).

Here, Mr. Sprunger's failure to raise the issue of the transcript of the forfeiture warrant hearing resulted in the transcript not being admitted to evidence at the trial level. Accordingly, and as noted by the trial court, the transcript did not form the basis of the trial court's decision, nor was the transcript even considered by the trial court. We conclude, therefore, that the trial court properly held that the transcript was outside the matters considered at the trial, and was properly excluded under Tennessee Rule of Appellate Procedure 24(e) ("Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. Absent extraordinary circumstances, the determination of the trial court is conclusive.").

## Whether Real Property is Subject to Forfeiture

As set out above, Tennessee Code Annotated Section 39-17-1008 provides that: "Any conveyance **or real** or personal **property** used in the commission of an offense under [Part 10 of Chapter 17, which is known as the Tennessee Protection of Children Against Sexual Exploitation Act] is subject to forfeiture." (Emphasis added). Mr. Sprunger challenges the State's authority to seize and forfeit his real property.

It is undisputed that Mr. Sprunger was convicted of violation of Tennessee Code Annotated Section 39-17-1003, which is part of the Tennessee Protection of Children Against Sexual Exploitation Act. Accordingly, Tennessee Code Annotated Section 39-17-1008 was applicable in this case. However, Mr. Sprunger contends that the statute does not allow the State to seize his real property.

To the extent that this issue requires us to interpret the statutory provisions, it presents a question of law, which we review *de novo* with no presumption of correctness. Tenn. R. App. P. 13(d). The Tennessee Supreme Court recently outlined the applicable principles that apply to the question of statutory interpretation:

> When dealing with statutory interpretation . . . our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. **Houghton v. Aramark Educ. Res., Inc.**, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. **In re C.K.G.**, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. **Eastman Chem. Co. v. Johnson**, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. **Abels ex rel. Hunt v. Genie Indus., Inc.**, 202 S.W.3d 99, 102 (Tenn. 2006).

**Estate of French v. Stratford House**, 333 S.W.3d 546, 554 (Tenn. 2011). Furthermore, statutes that are part of a broad statutory scheme should be interpreted *in pari materia*, so as to make that scheme consistent in all its parts. **Wells v. Tennessee Bd. of Regents**, 231 S.W.3d 912, 917 (Tenn.2007); **Lyons v. Rasar**, 872 S.W.2d 895, 897 (Tenn.1994); **State v. Allman**, 68 S.W.2d 478, 479 (Tenn. 1934). Courts are required to construe a statute, or set of statutes, "so that the component parts are consistent and reasonable." **In re Sidney J.**, 313 S.W.3d 772, 775 (Tenn. 2010) (quoting **Cohen v. Cohen**, 937 S.W.2d 823, 827 (Tenn.1996)). We also have a duty to interpret a statute in a manner that makes no part inoperative. **In re Sidney J.**, 313 S.W.3d at 775–76 (citing **Tidwell v. Collins**, 522 S.W.2d

674, 676 (Tenn.1975)). Moreover, courts are bound to apply the remedy prescribed by the Tennessee General Assembly, and may not depart from that remedy. ***Guy v. Mut. of Omaha Ins. Co.***, 79 S.W.2d 528, 536 (Tenn. 2002) ("If a statute creates a new right and prescribes a remedy for its enforcement, then the prescribed remedy is exclusive.") (quoting ***Hodges v. S.C. Toof***, 833 S.W.2d at 896, 899 (Tenn.1992)).

Here, the question presented by Mr. Sprunger is whether the Legislature's use of "real property" in Tennessee Code Annotated Section 39-17-1008 authorized forfeiture of his Property. The Legislature does not define the term "real property" in the statute. However, in interpreting the meaning of a word or phrase in a statute, the court may use dictionary definitions. ***State v. Majors***, 318 S.W.3d 850, 859 (Tenn. 2010) (quoting ***State v. Williams***, 690 S.W.2d 517, 529 (Tenn. 1985)); *see also* 82 C.J.S. Statutes § 415 ("If the statute does not sufficiently define a word used therein, the court may consider all known definitions of the word, including dictionary definitions, in order to determine the plain and ordinary meaning of the word.") (footnotes omitted). Accordingly, we turn to Black's Law Dictionary (7th ed. 1999), which defines "real property" as:

> Land and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land. Real property can be either corporeal (soil and buildings) or incorporeal (easements).

Black's Law Dictionary, at 1234. Based upon this definition, we can only conclude that, in enacting Tennessee Code Annotated Section 39-17-1008, the Legislature intended to include residential property within the scope of forfeiture.

Mr. Sprunger asserts that he can find no cases where real property has been the subject of forfeiture for the crime for which he has been convicted. Rather, he contends that the forfeiture of real property is usually triggered when a party is engaged in activities at the home such as growing marijuana. The fact that there are no cases directly on point is not dispositive of the Legislature's intent in enacting the statute. Rather, it is the plain language employed by the Legislature that directs the inquiry. Here, the plain language allows for forfeiture of real property, which under the foregoing definition would clearly include Mr. Sprunger's Property.

**Sufficiency of the Evidence**

Tennessee Code Annotated Section 40-33-210(a) provides:

> [T]he state shall have the burden to prove by a preponderance of

evidence that:

> (1) The seized property was of a nature making its possession illegal or was used in a manner making it subject to forfeiture under the sections set out in this subsection (a); and
> (2) The owner or co-owner of the property knew that the property was of a nature making its possession illegal or was being used in a manner making it subject to forfeiture, or, in the case of a secured party, that the standards set out in subsection (f) are met.

> (b)(1) Failure to carry the burden of proof shall operate as a bar to any forfeiture and the property shall be immediately returned to the claimant.

Tennessee Code Annotated Section 39-17-1008 provides that property is "subject to forfeiture," as that phrase is used in the above statute, if the property at issue is "used in the commission" of the offense. Thus, Mr. Sprunger argues that the State failed to meet its burden to show that the Property was "used in the commission" of his offense. The only evidence presented on this question was the undisputed testimony of Detective Haynes, wherein he states that Mr. Sprunger informed him that the computer in question was kept at the Property. This statement is further supported by photos taken at the Property, which show the pieces of the computer in question that had been removed from the computer prior to Mr. Sprunger tendering it to Mr. Tabor, lying on the floor of the Property. In addition, Detective Haynes testified, without objection from Mr. Sprunger, that the room, in which the parts of the computer in question were found, also had power outlets and an internet connection. From the record, and the undisputed testimony of Detective Haynes, we cannot conclude that the evidence preponderates against the trial court's determination that the State satisfied its burden to show that the Property was used in the commission of Mr. Sprunger's crime.

For the foregoing reasons, we affirm the order of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this Opinion. Costs of the appeal are assessed against the Appellant, Charles D. Sprunger. It appears from the record that Mr. Sprunger is proceeding *in forma pauperis*, and that he has satisfied the statutory requirements for pauper status for prisoners. Accordingly, execution may issue for costs if necessary.

_____
J. STEVEN STAFFORD, JUDGE